Filed 2/1/17

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ANDREW KALNOKI et al., | C073207 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34201100097598CUWEGDS) |
| v. | |
| FIRST AMERICAN TRUSTEE SERVICING SOLUTIONS, LLC et al., | |
| Defendants and Respondents. | |
| ANDREW G. KALNOKI et al., | C075062 C079144 |
| Plaintiffs and Appellants, | |
| v. | |
| WELLS FARGO BANK N.A. et al., | |
| Defendants and Respondents. | |

APPEAL from judgments of the Superior Court of Sacramento County, David I. Brown and Robert C. Hight, Judges. Affirmed in part and reversed in part.

Andrew G. Kalnoki for plaintiffs and appellants.

_____

[*] Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts I, II, III, IV, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, and XVII of the Discussion.

1

Law Offices of Glenn H. Wechsler, Glenn H. Wechsler and Natalie Sperry Mandelin for Defendants and Respondents First American Trustee Servicing Solutions and First American Title Insurance Company;

Dawe & Christopherson, Dean A. Christopherson, for Defendants and Respondents Wells Fargo Bank, N.A. and U.S. Bank National Association.

Plaintiffs Andrew and Kathi Kalnoki (the Kalnokis) appeal from a judgment dismissing their second amended complaint for wrongful foreclosure-related causes of action after the trial court sustained the defendants' demurrers without leave to amend (case No. C073207, or the foreclosure appeal). They separately appealed from an order after judgment awarding attorney fees to defendants (case No. C075062, or the attorney fees appeal), and also from an order disbursing funds the Kalnokis deposited with the court under Code of Civil Procedure section 1170.5 to delay the trial in an unlawful detainer action filed against them regarding the residential property at issue here (case No. C079144, or the rental disbursement appeal). We consolidated all three appellate cases for argument and decision.

Finding that the Kalnokis failed to allege a cause of action on any theory, we shall affirm the judgments dismissing the second amended complaint with prejudice. We also conclude the trial court properly awarded attorney fees. We find, however, that the court erred in disbursing to Wells Fargo the rental funds on deposit with the court. We therefore reverse the rental disbursement order and order that the funds be returned to the Kalnokis.

## FACTS AND PROCEEDINGS

A.     The Foreclosure Appeal (Case No. C073207)

Because this case comes to us on demurrer, we accept the truth of material facts properly pleaded in the operative second amended complaint--a 70-page document containing 400 separate paragraphs and incorporating over 30 pages of attached exhibits-

2

-but not contentions, deductions, or conclusions of fact or law in that pleading. (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924 (*Yvanova*).) We may also consider matters subject to judicial notice. (*Ibid.*) Although lengthy, convoluted, and rife with conclusory allegations, the second amended complaint alleges as follows:

In February 2004, the Kalnokis refinanced their home in Carmichael, California (the home or the property), with Wells Fargo Home Mortgage, Inc., by obtaining a $405,000 refinance loan (the loan), which they used for their home and to pay down some existing consumer debt. They allege they were enticed to leave their previous lender by false promises of later being able to easily modify the new adjustable rate loan.

The loan was secured by a deed of trust on the home naming the Kalnokis as the borrower, Wells Fargo Home Mortgage, Inc. as the lender and beneficiary, and Fidelity National Title Ins. Co. as the trustee. The deed of trust was recorded with the Sacramento County Recorder on February 17, 2004.

Under the deed of trust, the Kalnokis "irrevocably grant[ed] and convey[ed] [the property] to Trustee, in trust, with power of sale" in the event they defaulted on the loan. The lender, at its option, had the ability to appoint a successor trustee by an instrument executed and acknowledged by the lender and recorded in the recorder's office in Sacramento County. The lender also had the right to sell the note evidencing the loan or a partial interest in the note together with the deed of trust one or more times without prior notice to the borrower.

In May 2004, Wells Fargo Home Mortgage, Inc. merged with defendant Wells Fargo Bank, N.A. (Wells Fargo). Following the merger, Wells Fargo succeeded to the assets and liabilities of Wells Fargo Home Mortgage, Inc. and the latter entity ceased to exist.

In December 2009, after suffering several personal hardships, the Kalnokis fell behind on their loan payments. In March 2010, the Kalnokis forwarded a check to cover

3

one month's payment, but Wells Fargo declined the check as it was insufficient to bring the account current. The Kalnokis did not make any further mortgage payments.

After defaulting, the Kalnokis applied several times to Wells Fargo to modify their loan. Wells Fargo either lost or failed to process their modification applications. During the modification process, Wells Fargo employees repeatedly told the Kalnokis that their mortgage was owned by EMC Mortgage Corporation and that Wells Fargo was merely the loan servicer.

On March 30, 2010, defendant First American Title Insurance Company (FATCO) as "attorney-in-fact" for defendant First American LoanStar Trustee Services LLC (Loanstar) executed a notice of default and election to sell (Notice of Default) for the deed of trust. The Notice of Default identified Loanstar "as agent for the current beneficiary" of the deed of trust. Loanstar later changed its name to First American Trustee Servicing Solutions, LLC. For convenience, we shall refer to both entities as Loanstar.

Attached to the Notice of Default was a declaration stating that the requirements of Civil Code section 2923.5 had been met. John Kennerty, identified as the Vice President of Loan Documentation for Wells Fargo Home Mortgage, executed the declaration on March 24, 2010. The Notice of Default was recorded in Sacramento County on April 2, 2010.

On April 1, 2010, Wells Fargo, through its attorney in fact FATCO, executed a substitution of trustee (Substitution) substituting Loanstar as the new trustee on the deed of trust. The first page of the Substitution identifies the original beneficiary as Wells Fargo Home Mortgage, Inc. It also identifies Wells Fargo as the present beneficiary. The signature block on the second page includes the following: "Wells Fargo Bank, NA Successor by Merger to Wells Fargo Home Mortgage By First American Title Insurance Company as Attorney in Fact." Like the Notice of Default, the Substitution was recorded in Sacramento County on April 2, 2010.

4

On June 16, 2010, without the Kalnokis knowledge, Wells Fargo assigned the deed of trust and the note (the Assignment) to defendant U.S. Bank, N.A. (U.S. Bank), as Trustee for the Bear Stearns ARM Grantor Trust, Series 2005-2, a common law trust organized under New York trust Law (Bear Stearns securitized trust). The Bear Stearns securitized trust was governed by a pooling and services agreement that had specific requirements for transferring property into the trust.

FATCO executed the Assignment as "attorney in fact" for Wells Fargo as the "beneficiary" under the deed of trust. Wells Fargo is identified in the signature block as "successor by merger to Wells Fargo Home Mortgage, Inc." The Assignment was recorded in Sacramento County on June 21, 2010.

On July 3, 2010, Loanstar as trustee executed a notice of trustee's sale (Notice of Sale) for the Kalnokis' home. The Notice of Sale set a trustee's sale for July 26, 2010, and listed the outstanding balance owed on the loan as $407,839.32. The Notice of Sale was recorded in Sacramento County on July 6, 2010.

Attached to the Notice of Sale was a declaration executed by Marsha Graham that declared the mortgage loan servicer had obtained an exemption from certain statutory time limits for giving notice of the sale. Ms. Graham signed the declaration on June 17, 2009, as an Assistant Vice President of Wells Fargo Home Mortgage, Inc.

A nonjudicial foreclosure sale was held on February 22, 2011, and U.S. Bank was the successful bidder. Loanstar as trustee issued a Trustee's Deed Upon Sale to U.S. Bank, which was recorded in the Sacramento County Recorder's Office on March 1, 2011.

The Kalnokis filed this action the day of the trustee's sale to block the foreclosure sale. Three days later, the Kalnokis filed an amended complaint alleging 15 causes of action, including fraud, intentional and negligent infliction of emotional distress, violations of various foreclosure statutes as well as the Uniform Commercial Code, breach of the implied covenant of good faith and fair dealing, declaratory relief,

5

conspiracy, violations of California's Rosenthal Fair Debt Collection Practices Act (Rosenthal Act) and Business and Professions Code section 17200, unjust enrichment and rescission, and for a stay of proceedings. They later substituted U.S. Bank in as a "Doe" defendant.

Following the foreclosure sale, U.S. Bank filed a separate unlawful detainer action against the Kalnokis. The Kalnokis moved to stay the unlawful detainer action or otherwise consolidate it with their wrongful foreclosure case. The court granted the motion to consolidate the two actions, with the wrongful foreclosure action designated as the lead case, on the condition that the Kalnokis deposit damage payments with the court pursuant to Code of Civil Procedure section 1170.5 to delay the trial on the unlawful detainer action while the wrongful foreclosure case was pending. The Kalnokis stipulated to deposit monthly payments of $1,950, which represented the fair market rental value of the property.

Loanstar and FATCO jointly demurred to the amended complaint. Wells Fargo separately filed a demurrer in which U.S. Bank joined. The court first sustained the joint demurrer of Wells Fargo and U.S. Bank with prejudice as to the causes of action based on Civil Code sections 2923.5 and 2923.6 and UCC 3-104, stay of proceedings, and violation of the Rosenthal Act. The Kalnokis were given leave to amend all remaining causes of action. The court's ruling on the joint demurrer of Loanstar and FATCO was the same plus it also sustained the demurrer without leave to amend for the breach of the implied covenant of good faith and fair dealing cause of action and allowed the Kalnokis to allege a cause of action under the Federal Fair Debt Collection Practices Act.

In October 2011, the Kalnokis filed their second amended complaint with the deed of trust, Notice of Default, Substitution, Assignment, Notice of Sale, and Trustees' Deed Upon Sale attached as exhibits. The Kalnokis also attached a letter from Wells Fargo rejecting their check for one month's mortgage payment since it was insufficient to bring the default current.

6

The second amended complaint alleged four fraud causes of action and causes of action for conspiracy, declaratory relief, unjust enrichment, and for violating Business and Professions Code section 17200, Civil Code section 2932.5, and the Federal Fair Debt Collection Practices Act. We note that the cause of action for violating the federal Fair Debt Collection Practices Act was removed to federal court, and we need not discuss it further.

The crux of the second amended complaint was that the nonjudicial foreclosure sale was wrongful because the underlying documents such as the Assignment, Substitution, Notice of Default, Notice of Sale, and Trustee's Deed Upon Sale, were allegedly fraudulent or otherwise invalid. The Kalnokis also claimed that irregularities in the Assignment to the Bear Stearns securitized trust, which purportedly violated the trust's pooling and servicing agreement, meant that the deed of trust was never properly assigned to U.S. Bank.

Defendants demurred to the second amended complaint, arguing that the pleading failed to state facts sufficient to state any cause of action. Defendants argued Loanstar's acts as trustee were subject to statutory privilege, the foreclosure documents were properly prepared and that any alleged irregularities were not prejudicial, the Kalnokis lacked standing to raise issues regarding the validity of the Assignment to the Bearn Stearns securitized trust as they were neither parties to the Assignment nor beneficiaries under the trust, and that the Kalnokis did not tender the delinquent amount owing on the loan. FATCO and Loanstar asked the court to judicially notice the deed of trust, Substitution, Notice of Default, Assignment, Notice of Sale, Trustee's Deed Upon Sale, and the court's minute order sustaining their demurrer to the amended complaint. Wells Fargo and U.S. Bank also asked the court to judicially notice the second amended complaint, deed of trust, documents from the California Comptroller of Currency and Secretary of State confirming the merger between Wells Fargo Home Mortgage, Inc. and Wells Fargo, documents from the Texas Secretary of State showing Loanstar's name

7

change, the minute orders sustaining the demurrers to the amended complaint, the order dismissing the Kalnokis' federal claim, and a list of licensees that were exempt from Civil Code section 2923.52, subdivision (a) from the California Secretary of State's website.

After granting defendants' respective requests for judicial notice, the court sustained the demurrers without leave to amend. The Kalnokis moved for reconsideration and for leave to file a proposed third amended complaint. The proposed third amended complaint had ballooned to 116 pages, consisting of 752 separate paragraphs and 13 causes of action. Because the Kalnokis failed to precisely identify the allegations intended to be deleted and added to the proposed third amended complaint as required by court rules, the court denied the motion.

The court entered a judgment of dismissal with prejudice in favor of defendants FATCO and Loanstar on January 25, 2013. A separate judgment of dismissal with prejudice in favor of defendants Wells Fargo and U.S. Bank was entered on February 19, 2013. The Kalnokis appealed both judgments (the foreclosure appeal or case No. C073207). They also filed two motions for sanctions against defendants' counsel for purportedly relying on "perjured" foreclosure documents and "fraudulent" arguments in opposing the appeal.

B.    The Attorney Fees Appeal (Case No. C075062)

Following the entry of judgment, Wells Fargo and U.S. Bank moved for attorney fees based on provisions in the deed of trust and the accompanying note. They sought $31,570 in fees. The Kalnokis opposed the motion, generally rehashing the arguments on the demurrers and also asserting that attorney fees were improper because there was no privity of contract between themselves and defendants, they did not assert any contract causes of action, and that the promissory note and deed of trust might not be true and

8

correct copies of the originals. The court rejected their arguments and granted the motion, but reduced the requested amount to $14,500.

The Kalnokis appealed the order granting attorney fees (the attorney fees appeal or case No. C075062). In that appeal, the Kalnokis filed a motion for sanctions against defense counsel, which the court denied. (See Motion for Sanctions in the attorney fees appeal, filed March 4, 2014; see also Order denying motion for sanctions dated March 27, 2014.) The Kalnokis then filed another motion for sanctions contending that because defendants' underlying motion for attorney fees was purportedly frivolous their brief on appeal was "fraudulent and criminal" thus warranting sanctions.

C.    The Rental Disbursement Appeal (Case No. C079144)

After the judgments of dismissals were entered, Wells Fargo and U.S. Bank moved to sever the unlawful detainer action from the wrongful foreclosure action. Over the Kalnokis' objections, the court granted the motion. U.S. Bank then moved for summary judgment in the unlawful detainer action. The court granted the motion and awarded possession of the property to U.S. Bank. The unlawful detainer judgment includes the following notation: "The plaintiff waives all monetary damages."

The Kalnokis appealed the unlawful detainer judgment in the appellate division of the superior court. The judgment was affirmed. Following remittitur, the superior court appellate decision was deemed final.

The Kalnokis then filed a petition for writ of mandate in this court seeking to set aside the unlawful detainer judgment and the order granting summary judgment in favor of U.S. Bank. The petition was denied.

In January 2015, Wells Fargo and U.S. Bank moved the trial court to disburse the $40,950 the Kalnokis had deposited with the court under Code of Civil Procedure section 1170.5 to delay the pending unlawful detainer action. The Kalnokis opposed the motion, generally reasserting their demurrer arguments and also claiming that U.S. Bank

9

voluntarily waived any right to damages in the unlawful detainer judgment. They also asked the court to distribute the $40,950 to them. The court granted Wells Fargo and U.S. Bank's motion to disburse, and ordered that the funds be immediately disbursed to Wells Fargo through its counsel. The Kalnokis appealed (the rental disbursement appeal or case No. C079144).

All three appeals have been consolidated for argument and decision. The Kalnokis' three remaining sanction motions have also been consolidated for decision.

DISCUSSION

I

*General Principles*

" 'The financing or refinancing of real property in California is generally accomplished by the use of a deed of trust.' " (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1491 (*Rossberg*).) A deed of trust that secures a loan typically has three parties: "the trustor (borrower), the beneficiary (lender), and the trustee." (*Yvanova, supra,* 62 Cal.4th at p. 926.) The deed of trust " 'conveys title to real property from the trustor-debtor to a third party trustee to secure the payment of a debt owed to the beneficiary-creditor under a promissory note.' " (*Rossberg, supra,* 219 Cal.App.4th at p. 1491.)

" 'The trustee holds a power of sale. If the debtor defaults on the loan, the beneficiary may demand that the trustee conduct a nonjudicial foreclosure sale.' " (*Yvanova, supra,* 62 Cal.4th at p. 926.) Thus, while a trustee initiates the nonjudicial foreclosure sale, it may do so "only at the direction of the person or entity that currently holds the note and the beneficial interest under the deed of trust--the original beneficiary or its assignee--or that entity's agent." (*Id.* at p. 927; Civil Code, § 2924, subd. (a)(1) [notice of default may be filed for record only by "[t]he trustee, mortgagee, or

10

beneficiary, or any of their authorized agents"]; unless otherwise set forth, statutory section references that follow are to the Civil Code.)

California's nonjudicial foreclosure scheme is set forth in Civil Code sections 2924 through 2924l, which " 'provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust.' " (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154 (*Gomes*).) To commence a nonjudicial foreclosure, a trustee records a notice of default and election to sell. (§ 2924, subd. (a)(1).) After a three-month waiting period, and at least 20 days before the scheduled sale, the trustee may publish, post, and record a notice of sale. (§§ 2924, subd. (a)(2), 2924f, subd. (b).)

The statutory provisions for conducting a nonjudical foreclosure " 'cover every aspect of exercise of the power of sale contained in a deed of trust.' " (*Gomes, supra,* 192 Cal.App.4th at p. 1154.) Given the " 'exhaustive nature' " of the statutory framework, " 'California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute.' " (*Ibid.*) We thus presume that a nonjudicial foreclosure sale was conducted regularly. (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 105 (*Lona*).) The party challenging the nonjudicial foreclosure sale must rebut the presumption of regularity by presenting substantial evidence of prejudicial procedural irregularity. (*Ibid.*; *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 270 (*Fontenot*), disapproved on other grounds by *Yvanova, supra,* 198 Cal.4th at p. 939, fn. 13.)

## II

### *Judicial Notice*

The trial court's rulings sustaining the demurrers were based on taking judicial notice of recorded documents that, to an extent, contradicted the allegations in the second

amended complaint. These documents included the deed of trust, Substitution, Notice of Default, Assignment, Notice of Sale, and Trustee's Deed Upon Sale, among others.

The Kalnokis contend these documents are hearsay and that the court could not accept the documents and any facts asserted in them for their truth. To support their argument, they cite *Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366 (*Herrera v. Deutsche Bank*), in which this court reversed a grant of summary judgment on the ground that the trial court improperly took judicial notice of statements made within recorded documents in a challenge to a nonjudicial foreclosure sale.

" ' " 'Judicial notice is the recognition and acceptance by the court, for use by the trier of fact or by the court, of the existence of a matter of law or fact that is relevant to an issue in the action without requiring formal proof of the matter.' " ' " (*Fontenot, supra,* 198 Cal.App.4th at p. 264.) "We review the trial court's ruling on the request for judicial notice for abuse of discretion." (*Ibid.*)

At the outset, we note that Paragraph 203 of the second amended complaint concedes these documents are "true and correct" copies of the originals, "join[s] in" defendant's request for judicial notice, and "agree[s]" that the court should "take Judicial Notice of those documents." In Paragraph 204, the Kalnokis "incorporated" the documents "word for word" into the second amended complaint, and asked that the court supply any missing facts from those documents. The Kalnokis' claim that the court erred in so doing is thus not well taken. (*Transport Ins. Co. v. TIG Ins. Co.* (2012) 202 Cal.App.4th 984, 1000 [" 'Under the doctrine of invited error, when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error' "].)

In any event, it is well settled that courts may take judicial notice of recorded deeds of trust, substitutions of trustees, and assignments of deed of trust as these documents are generally considered reliable and easily confirmable. (*Yvanova, supra,*

12

62 Cal.4th at p. 924, fn.1; *Fontenot, supra,* 198 Cal.App.4th at pp. 264-265.) "[T]he fact of a document's recordation, the date the document was recorded and executed, the parties to the transaction reflected in a recorded document, and the document's legally operative language, assuming there is no genuine dispute regarding the document's authenticity" are all judicially noticeable. (*Fontenot,* at p. 265.) "From this, the court may deduce and rely upon the legal effect of the recorded document, when that effect is clear from its face." (*Ibid.*)

In *Yvanova*, for example, the Supreme Court took judicial notice of the existence and facial contents of the recorded deed of trust, assignment of the deed of trust, substitution of trustee, notices of default and of trustee's sale, and trustee's deed upon sale. (*Yvanova, supra,* 62 Cal.4th at p. 924, fn. 1.) In *Fontenot*, the court took judicial notice of the fact a party was beneficiary from a first deed of trust, explaining that the party's status as beneficiary was not a matter of fact existing apart from the document itself; the party was beneficiary under the deed of trust because, as a legally operative document, the deed of trust designated the party as beneficiary. (*Fontenot, supra,* 198 Cal.App.4th at p. 266.) In *Scott v. JP Morgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 752 (*Scott*), the court took judicial notice of several documents (and facts therein), including a federal government order appointing the Federal Deposit Insurance Corporation (FDIC) as Washington Mutual's receiver and a Purchase & Assumption Agreement, which provided that the FDIC transferred to JPMorgan assets of Washington Mutual but not certain liabilities of the defunct bank because that was the *legal effect* of the documents.

*Herrera v. Deutsche Bank*, which the Kalnokis cite, does not persuade us the court erred. That case involved a challenge to a nonjudicial foreclosure sale where the plaintiffs claimed the foreclosing bank and the trustee were not the beneficiary and trustee under a 2003 deed of trust on the property. (*Herrera v. Deutsche Bank, supra,* 196 Cal.App.4th at p. 1368.) The 2003 deed of trust listed Long Beach Mortgage

13

Company as trustee and beneficiary.  (*Id.* at p. 1371.)  To establish that the proper parties had foreclosed, the trial court was asked to take judicial notice of an assignment of deed of trust that assigned "all interest under the 2003 deed of trust to the [foreclosing] bank by JPMorgan Chase Bank, as successor in interest to Washington Mutual Bank, successor in interest to Long Beach Mortgage Company," and a substitution of trustee executed by the foreclosing bank, which showed the foreclosing bank, as beneficiary, had substituted a new trustee.  (*Id.* at p. 1374.)

The trial court granted the request and took judicial notice of the fact that the foreclosing bank was the beneficiary under the 2003 deed of trust based on statements *within* the substitution of trustee form and the assignment of deed of trust.  (*Herrera v. Deutsche Bank, supra,* 196 Cal.App.4th at pp. 1373-1374.)  We reversed, finding it was improper to take judicial notice of the fact that the foreclosing bank was the beneficiary based on the substitution of trustee form because the recital in the document that the bank "is the present beneficiary" was hearsay and disputed.  (*Id.* at p. 1375.)  The substitution of trustee form itself did not designate the beneficiary but only contained a recital *about* the beneficiary.  (*Ibid.*)  It was improper to take judicial notice based on the assignment of the deed of trust because, even though the document recited that the bank was assigned all beneficial interest under the deed of trust by a predecessor bank, its recital that the *predecessor* bank was successor to the original beneficiary was hearsay, so the overall truthfulness of the assignment of the deed of trust remained subject to dispute as well. (*Ibid.*) The foreclosing bank had offered "no evidence to establish that JPMorgan Chase Bank had the beneficial interest under the 2003 deed of trust to assign to the Bank." (*Ibid.*)

Unlike the Kalnokis contend, *Herrera v. Deutsche Bank* did not hold that judicial notice cannot be taken of the legal effect of a legally operative document (like an assignment of deed of trust or substitution of trustee); "it simply held that it could not be done in *that* case, because the vitality of the assignment was reasonably subject to dispute

14

without independent proof that the party assigning the interest had the authority to do so." (*Scott, supra,* 214 Cal.App.4th at p. 756 [distinguishing *Herrera v. Deutsche Bank* on this ground]; see also *Fontenot, supra,* 198 Cal.App.4th at pp. 266-267 & fn. 7 [same].) In this case, we conclude the court properly took judicial notice of the recorded deed of trust, Substitution, Assignment, Notice of Default, Notice of Sale, and Trustee's Deed Upon Sale, as well as of facts derived from the legally operative effects of these documents, which are discussed more fully below.

Furthermore, because the Kalnokis attached the deed of trust, Notice of Default, Substitution, Assignment, Notice of Sale, and the Trustee's Deed Upon Sale as exhibits to the second amended complaint, the court was also entitled to take notice of the attached exhibits and the facts contained in those exhibits when ruling on the demurrers. (*Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1447 (*Holland*) ["We may also take notice of exhibits attached to the complaint[]"].) The court was also amply justified in accepting facts in those exhibits over contradictory allegations in the second amended complaint. (*Ibid.* ["If facts appearing in the exhibits contradict those alleged, the facts in the exhibits take precedence"]; *SC Manufactured Homes, Inc. v. Liebert* (2008) 162 Cal.App.4th 68, 83 ["If the allegations in the complaint conflict with the exhibits, we rely on and accept as true the contents of the exhibits"]; *Weitzenkorn v. Lesser* (1953) 40 Cal.2d 778, 785-786 [" 'The general rule is that when a written instrument which is the foundation of a cause of action or defense is attached to a pleading as an exhibit and incorporated into it by proper reference, the court may, upon demurrer, examine the exhibit and treat the pleader's allegations of its legal effect as surplusage.' [Citation.]"].)

We next turn to the Kalnokis' multiple requests for judicial notice on appeal. In their opening brief in the foreclosure appeal, the Kalnokis asked us to take judicial notice of Collateral Term Sheets, Form 8-K on the website of the Securities and Exchange Commission (SEC). After Wells Fargo and U.S. Bank opposed the request as improper

15

under rules 8.54 and 8.252 of the California Rules of Court, the Kalnokis filed a motion for judicial notice asking us to notice (1) a 1099A tax form, which they claim shows Freddie Mac owned the property on the date of the foreclosure sale, and (2) the Collateral Term Sheets, which they argue "conclusively establish[es]" that the Wells Fargo Trust was the true beneficiary or owner of the Kalnokis' deed of trust and not Wells Fargo or U.S. Bank as trustee for the Bear Stearns securitized trust.

We grant the Kalnokis' request for judicial notice of the certified Collateral Term Sheets.  (Evid. Code, § 452, subds. (c) & (h).)  Public disclosure documents required by law to be filed, and actually filed, with the SEC are subject to judicial notice.  (*Bryant v. Avado Brands, Inc.* (11th Cir. 1999) 187 F.3d 1271, 1277-1278 & fn.10 (*Bryant*).)

We deny their request to take judicial notice of the 1099A tax form, however.  The Kalnokis have failed to establish that this document is a proper subject for judicial notice.  (Evid. Code, § 452.)  It is not clear from the request how the Kalnokis obtained a copy of the document.  Mr. Kalnokis' declaration in support of the request states only, "I [Mr. Kalnoki] know that the document attached hereto as Exhibit B, is a true and correct copy of the 1099A Tax Form that Wells Fargo Bank, NA, prepared under oath and submitted to the Internal Revenue Service . . . ."  He provides no basis for such purported *knowledge*, and the document bears no official certification from the Internal Revenue Service.

While the tax form is attached as Exhibit C to a proposed third amended complaint the Kalnokis sought leave to file, which the court denied, nothing in the allegations sheds light on the document's origin or whether it was actually filed with the Internal Revenue Service as the Kalnokis' claim.  The 1099A tax form was also attached to Mr. Kalnokis' declaration filed in opposition to the motion to disburse the rental funds on deposit with the court.  His declaration, however, states only that he "believe[s] that the 1099A Tax Form is conclusive proof that as of February 22, 2011, the owner of the Kalnokis' home was Freddie Mac, as is stated therein, and not U.S. Bank, NA, as was fraudulently

16

claimed by it." Without more, Mr. Kalnokis' unsubstantiated assertions that *he knows* Wells Fargo filed the 1099A tax form under penalty of perjury with the Internal Revenue Service are insufficient.

In any event, we do not agree that the documents establish what the Kalnokis allege. As *Herrera v. Deutsche Bank* pointed out, " '[t]aking judicial notice of a document is not the same as accepting the truth of its contents or accepting a particular interpretation of its meaning.' " (*Herrera v. Deutsche Bank, supra,* 196 Cal.App.4th at p. 1375.) Unlike the documents discussed above, neither the Collateral Term Sheets nor the 1099A tax form are *legally operative documents* for purposes of establishing the beneficiary of the deed of trust. (*Bryant, supra,* 187 F.3d at pp. 1277-1278 & fn.10 [public disclosure documents filed with the SEC may be judicially noticed for the purpose of determining what statements the documents contain but not to prove the truth of the documents' contents].) The documents, then, do not "conclusively establish" the identity of the beneficiary at relevant times during the foreclosure proceedings like the Kalnokis contend.

We note that the Kalnokis originally moved to augment the record with the Collateral Term Sheets. We initially denied the request on the grounds that the documents had not been presented to the trial court. The Kalnokis then filed a motion to set aside our order denying the motion to augment, claiming that a copy of the Collateral Term Sheets printed from the Securities and Exchange Commission's website were attached as an exhibit to the Kalnokis' supplemental opposition when challenging the *motion for attorneys' fees* after the demurrers had been sustained without leave to amend. A decision on the motion to set aside our prior ruling was deferred. Because all of the appeals have been consolidated and both the Collateral Term Sheets and the 1099A tax form appear in the rental disbursement record, reconsideration of the motion to augment is moot.

17

In the attorney fees appeal, the Kalnokis filed a request for judicial notice of multiple documents, including an excerpt from the memorandum of points and authorities filed by Wells Fargo and U.S. Bank on the first demurrer and declarations of counsel filed in the attorney fees appeal and in the rental disbursement appeal, all of which already appear in the records for those appellate cases, as well as a portion of the Collateral Term Sheets and other various documents the Kalnokis may have obtained in the mail or printed from the internet. Wells Fargo and U.S. Bank opposed the request. We denied the request for judicial notice; the attached materials were disregarded.

They filed a second request for judicial notice of a document entitled Supplement to Emergency Motion to Reopen for Additional Evidence that was allegedly filed in an unrelated New York bankruptcy case as well as an attached document that was purported to be a Wells Fargo Foreclosure Attorney Procedures Manual. Wells Fargo and U.S. Bank opposed the request, arguing the documents were not the proper subject of judicial notice and that the foreclosure manual constituted a privileged communication. We denied the Kalnokis' request for judicial notice, and ordered that the materials be disregarded. We do not consider any of these documents in analyzing any of the issues on appeal.

### III

### *Standard of Review*

The purpose of a demurrer is to test the sufficiency of the pleadings to state a cause of action as a matter of law. (*Gomes, supra,* 192 Cal.App.4th at p. 1153.) On appeal from a dismissal entered after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action. (*City of Morgan Hill v. Bay Area Air Quality Management Dist.* (2004) 118 Cal.App.4th 861, 869-870 (*City of Morgan Hill*).)

We must assume the truth of all properly pleaded facts as well as those that are judicially noticeable, but we do not accept contentions, deductions or conclusions of fact or law. (*Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1501 (*Herrera v. Federal National*); *City of Morgan Hill, supra,* 118 Cal.App.4th at pp. 869-870.) "We may also take notice of exhibits attached to the complaint[]." (*Holland, supra,* 86 Cal.App.4th at p. 1447.) "If the allegations in the complaint conflict with the exhibits, we rely on and accept as true the contents of the exhibits." (*SC Manufactured Homes, Inc. v. Liebert*, *supra*, 162 Cal.App.4th at p. 83; accord, *Holland, supra,* 86 Cal.App.4th at p. 1447 ["If facts appearing in the exhibits contradict those alleged, the facts in the exhibits take precedence"].)

Where, as here, the trial court sustains the demurrer without leave to amend, we must decide whether there is a reasonable possibility the plaintiffs can cure the defect with an amendment. (*Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 506 (*Jenkins*).) If it is reasonably possible that amendment can cure the defect, the trial court abuses its discretion by not allowing a plaintiff to amend. Plaintiffs bear the burden of proving an amendment would cure the defect. (*Gomes, supra,* 192 Cal.App.4th at p. 1153.)

IV

*Unsupported Arguments*

Before addressing the causes of action alleged in the relevant pleadings, we note that the Kalnokis assert several arguments that they claim are common to all defendants, but which are not supported by any citation to the record or citation to any authority. These include that defendants engaged in real estate title laundering, double pledged assets, and that the claims pursued by Wells Fargo might be owned by some insurance company or the Federal Reserve that may have subrogation rights against the owners of

19

the delinquent assets that were purchased.  They further allege that there is no proof an unnamed bankruptcy trustee for Freddie Mac approved the foreclosure.

"Appellate briefs must provide argument and legal authority for the positions taken.  'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.  [Citations.]' " (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 (*Nelson*) [court declined to address argument on issue that appellant had failed to provide more than a brief recitation of the argument in his appellate brief without supporting authority]; *Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368 ["One cannot simply say the court erred, and leave it up to the appellate court to figure out why"].)

It is also incumbent on an appellant to cite to relevant portions of the record to support factual allegations or arguments in a brief.  "If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived."  (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 (*Duarte*); *Fox v. Erickson* (1950) 99 Cal.App.2d 740, 742 (*Fox*) ["It is the duty of counsel to refer the reviewing court to the portion of the record to which he objects and to show that the appellant was prejudiced thereby"]; Cal. Rules of Court, rule 8.204, subd. (a)(C) [appellate briefs must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].)

Given the Kalnokis' cursory discussion of these issues, without citation to any authority or any reference to the record, the arguments are forfeited.

V

*Fraud*

The Kalnokis' second amended complaint alleges four separate fraud causes of action, one against each defendant.  To withstand demurrer, facts constituting every

20

element of fraud must be alleged with particularity.  The elements of fraud are a false representation of a material fact, knowledge of the falsity, intent to induce another to rely on the representation, reliance, and resulting damages.  (*West v. JP Morgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 792 (*West*); *Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 157.)  To assert a cause of action for fraud against a corporation, a plaintiff must allege the name of the person who allegedly made the fraudulent representation, his or her authority to speak, to whom he or she spoke, what was said and when it was said.  (*Tarmann*, at p. 157.)  General or conclusory allegations will not suffice to plead a cause of action for fraud.  (*West*, at p. 793.)

On appeal, the Kalnokis characterize their fraud causes of action as predicated upon "documentary fraud."  Although rife with inflammatory rhetoric and conclusory allegations, the gist of the second amended complaint is that all of the documents related to the foreclosure process are fraudulent and invalid.

A.      The Substitution of Trustee

The Kalnokis first allege the Substitution to Loanstar is invalid because Wells Fargo was merely the loan servicer and not the true beneficiary of the deed of trust when it executed the Substitution through FATCO as its attorney in fact.  They contend that as the loan servicer Wells Fargo had no authority to substitute Loanstar as trustee.  And because Loanstar was not properly substituted, all subsequent acts as the purported trustee were tainted thereby rendering the foreclosure proceedings invalid.

The Kalnokis' second amended complaint appears to posit two theories for the allegation that Wells Fargo was not the beneficiary of the deed of trust when it made the Substitution.  The Kalnokis first allege that telephone operators for Wells Fargo told them that the deed of trust was owned by EMC Mortgage Corporation and that Wells Fargo was merely the loan servicer.  Notably, in the original version of the complaint, the Kalnokis alleged that the telephone operators with whom they spoke had no knowledge

21

of their case, nor any authority to discuss modification of their loan. The second amended complaint contains similar allegations that the telephone operators were unqualified to discuss information pertaining to their delinquent loan.

Next, the Kalnokis contend Wells Fargo did not succeed to the rights and interests of Wells Fargo Home Mortgage, Inc. as the initial beneficiary of the deed of trust following the merger of the two companies.

In their briefing, the Kalnokis now attempt to assert a third theory, not alleged in the second amended complaint, that the true owner of the deed of trust is actually Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2005-AR3 (Wells Fargo Asset Securities Trust), which was purportedly controlled by Freddie Mac. They claim that the Collateral Term Sheets and the 1099A tax form "conclusively" prove Wells Fargo Asset Securities Trust is the true owner of their property.

Based on the publicly recorded documents, however, the trial court concluded Wells Fargo was the beneficiary under the deed of trust when it executed the challenged Substitution. The court found that the exhibits attached to the second amended complaint contradicted the Kalnokis' allegation that Wells Fargo was not the beneficiary of the deed of trust.

The deed of trust specifically identifies the original beneficiary as Wells Fargo Home Mortgage Inc. As a legally operative document designating the beneficiary (*Fontenot, supra,* 198 Cal.App.4th at p. 266 [court did not err in taking judicial notice of fact that MERS was the beneficiary of the first deed of trust]), the identity of Wells Fargo Home Mortgage, Inc. as the original beneficiary is not reasonably subject to dispute. The Kalnokis also alleged Wells Fargo Home Mortgage Inc. was the beneficiary under the deed of trust.

The Substitution substitutes Loanstar as trustee in place of Fidelity. The text of the Substitution identifies Wells Fargo Home Mortgage, Inc. as the original beneficiary and Wells Fargo as the present beneficiary. The signature block on the Substitution,

22

however, recites that Wells Fargo is the "successor by merger" to *Wells Fargo Home Mortgage*, and not *Wells Fargo Home Mortgage, Inc.* While the Kalnokis claim the omission of the word "Inc." after the words "Wells Fargo Home Mortgage" from the signature block invalidates the Substitution, we disagree.

Under the circumstances, it appears omitting the word "Inc." from the signature block was obviously a mere inadvertence or typographical error that was not material and did not affect the validity of the Substitution. (*Domino v. Mobley* (1956) 144 Cal.App.2d 24, 29 (*Domino*) [uncertainty from obvious typographical error regarding amount of note in an escrow instruction contract could be resolved by extrinsic evidence].) Notably, the signature block on the Assignment, executed only two months later, states: "Wells Fargo Bank, N.A., Successor by Merger to Wells Fargo Home Mortgage, Inc., By First American Title Insurance Company, Its Attorney in Fact, as Beneficiary."

And the Kalnokis themselves concede Wells Fargo Home Mortgage is only a fictitious name under which Wells Fargo conducted business, and that a "merger" between Wells Fargo and its fictitious name is legally impossible. Moreover, the fact of the merger between Wells Fargo and *Wells Fargo Home Mortgage, Inc.*, and the legal effect of that merger, were supplied by other documents of which the court properly took judicial notice. (Evid. Code, § 452, subds. (c), (h); *Domino, supra,* 144 Cal.App.2d at p. 29].)

Official records from the comptroller of the currency and the California Secretary of State established that Wells Fargo Home Mortgage, Inc. merged into defendant Wells Fargo in May 2004 and that Wells Fargo succeeded to all of its interests. (Evid. Code, § 452, subds. (c), (h); *Scott, supra,* 214 Cal.App.4th at p. 755 [trial court properly took judicial notice of legal effects of government order appointing a receiver for an insolvent bank and a Purchase and Assumption Agreement transferring the insolvent bank's assets but not its liabilities to an acquiring bank].) Notably, Paragraph 157 of the second amended complaint alleges Wells Fargo Home Mortgage, Inc. ceased to exist on or about

23

May 8, 2004--the same date reflected in the merger documents which the court judicially noticed.

Under the National Bank Consolidation and Merger Act (12 U.S.C. 215 et seq.), the comptroller of the currency may be requested to approve a merger agreement reached between a national banking association or a state bank, and a national bank located within the same state. (12 U.S.C. § 215a, subd. (a)(4).) If the comptroller of the currency approves the merger agreement, as occurred here, the charter of the receiving association controls, and the receiving association is responsible for the liabilities of the bank or association that was merged into the receiving association. (12 U.S.C. § 215a, subd. (a)(4).) The receiving association "shall be deemed to be the same corporation as each bank or banking association participating in the merger. All rights, franchises, and interests of the individual merging banks or banking associations in and to every type of property (real, personal, and mixed) and chooses in action shall be transferred to and vested in the receiving association by virtue of such merger without any deed or other transfer. The receiving association, upon the merger and without any order or other action on the part of any court or otherwise, shall hold and enjoy all rights of property, franchises, and interests, . . . , and all other rights and interests . . . , in the same manner and to the same extent as such rights, franchises, and interests were held or enjoyed by any one of the merging banks or banking associations at the time of the merger. . . ." (12 U.S.C. § 215a, subd. (e).) The merger agreement itself contains similar language, providing the legal effect of the merger was that "all the properties, rights, privileges, powers and franchises of [Wells Fargo Home Mortgage, Inc.] shall vest in the Surviving Corporation [Wells Fargo]…"

In May 2004, then, the comptroller of the currency had approved the merger between Wells Fargo Home Mortgage, Inc. and Wells Fargo, and the latter entity succeeded to the status of beneficiary of the deed of trust by operation of law and the approved merger agreement. (12 U.S.C. § 215a, subd. (e).) These legally operative

24

documents provided the link found missing in *Herrera v. Deutsche Bank*. (*Herrera v. Deutsche Bank, supra,* 196 Cal.App.4th 1375 [noting that the foreclosing bank had offered no evidence to establish that its predecessor bank had any interest in the deed of trust to assign to it].)

The Kalnokis' allegations in the second amended complaint that a telephone operator, who they also alleged had no "knowledge of the case" and were "unqualified," told them EMC Mortgage Corporation was the beneficiary or their belated contention that Wells Fargo Asset Securities Trust was the beneficiary conflict with the legal effect of the above judicially noticeable exhibits and documents in the public record. So, too, does their allegation that Wells Fargo did not succeed Wells Fargo Home Mortgage, Inc. as beneficiary following the merger of the two entities. In such circumstances, we may disregard the Kalnokis' conflicting allegations. (*Holland, supra,* 86 Cal.App.4th at p. 1447 [facts appearing in attached exhibits control over contradictory factual allegations in operative complaint].)

As the beneficiary of the deed of trust, Wells Fargo was authorized to substitute Loanstar as trustee in place of Fidelity. "By statute the Legislature has permitted the beneficiary of a deed of trust to substitute, at any time, a new trustee for the existing trustee." (*Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868, 871 (*Dimock*); see also § 2934a, subd. (a)(1).)

Paragraph 24 of the deed of trust, moreover, partly provides: "Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee, and Borrower, the book and page where this Security Instrument [the deed of trust] is recorded and the name and address of the successor trustee." Upon such a substitution, the successor trustee "succeed[s] to all the title, power and duties conferred upon the Trustee herein and by Applicable Law."

25

Paragraph 24 finally provides that the above-described procedure for substitution of trustee "shall govern to the exclusion of all other provisions for substitution."

It is this latter sentence of Paragraph 24 that the Kalnokis cite as another basis for challenging the Substitution's validity. In their view, Wells Fargo did not comply with the specific procedures set forth in Paragraph 24 for substituting a new trustee because FATCO executed the Substitution as Wells Fargo's attorney in fact. They claim, without any citation to authority, that a power of attorney had to be attached to the Substitution before FATCO could execute the instrument on Wells Fargo's behalf.

The Kalnokis' urged interpretation of Paragraph 24 is too narrow and disregards other provisions in the deed of trust, however. (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 526 ["courts must give a ' "reasonable and commonsense interpretation" ' of a contract consistent with the parties' apparent intent"]; § 1641 ["The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other"].) Paragraph 16, for example, provides that the deed of trust shall be governed by, among other things, the "law of the jurisdiction in which the Property is located." In California, any action that may be done by a principal may also be done by the principal's agent unless the act specifically requires the principal's personal attention. (§ 2304.)

Here, Paragraph 24's language neither prohibits the lender from acting through an agent nor expressly requires the lender's "personal attention" in executing the document. We decline to imply such a provision into the language of the deed of trust. (*The Ratcliff Architects v. Vanir Construction Management, Inc.* (2001) 88 Cal.App.4th 595, 602 [courts will not add a term to a contract about which the agreement is silent].) We also note that similar substitutions of trustee, executed by an agent on behalf of the beneficiary, have been found valid. (See e.g., *Dimock, supra,* 81 Cal.App.4th at p. 872 [recognizing validity of a recorded substitution of trustee that was prepared by an agent

26

acting on the beneficiary's behalf].)  Thus, the fact that FATCO executed the Substitution on behalf of Wells Fargo is of no moment, and does not render the Substitution invalid.

Nor is it invalid because it lacks an attached power of attorney.  Nowhere in the nonjudicial foreclosure statutes or the deed of trust does it require a beneficiary to provide copies of any power of attorney to the borrower.  " 'California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute' " due to its comprehensive nature.  (*Gomes, supra,* 192 Cal.App.4th at p. 1154.)

In *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 83 (*Siliga*), disapproved on other grounds in *Yvanova, supra,* 62 Cal.4th at p. 939, fn.13, for example, the court rejected the borrower's argument that the lender's nominee required written authorization to assign the deed of trust and note and there was no evidence that the nominee had such written authorization.  The court found the argument amounted to "a preemptive claim seeking to require the foreclosing party to demonstrate in court its authority to initiate a foreclosure," which was invalid and subject to demurrer.  (*Siliga*, *supra*, 219 Cal.App.4th at pp. 84-85.)  The Kalnokis' similar claim that there is no evidence that the beneficiary's agent had a written power of attorney authorizing it to substitute a trustee fails for the same reason.

Finally, the second amended complaint alleges the Substitution is invalid because Loanstar had a conflict of interest that prevented it from accepting the Substitution.  They argue that because Loanstar may have been the agent for the beneficiary at one point, it could not later become the trustee under the deed of trust.  In a related argument, their opening brief also asserts that Loanstar as trustee owed them certain fiduciary duties. The trustee of a deed of trust, however, "is not a true trustee with fiduciary obligations, but acts merely as an agent for the borrower-trustor and lender-beneficiary."  (*Yvanova, supra,* 62 Cal.4th at p. 927.)  Thus, no conflict of interest prevented Loanstar from accepting the Substitution, and Loanstar did not have any fiduciary duties to the Kalnokis during the foreclosure process.

27

B.     The Assignment

The Kalnokis challenged the validity of the Assignment to U.S. Bank on several grounds. First, as with the Substitution, they claim the Assignment was ineffective because Wells Fargo was not the beneficiary of the deed of trust when the Assignment was made. Second, they allege the Assignment was fraudulent because neither Wells Fargo nor U.S. Bank ever held the promissory note the deed of trust secured. They also alleged that the Bear Stearns securitized trust had already closed when Wells Fargo assigned the deed of trust and note to U.S. Bank as trustee for the securitized trust. In other words, they allege the securitization process failed. Finally, without any citation to the record, they contend in their reply brief that the Assignment was executed by an employee of Loanstar and not FATCO as the attorney in fact for Wells Fargo. We disregard this last contention. (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 60 (*Lueras*) [court may decline to consider passage of brief that fails to comply with rule 8.204 of the Cal. Rules of Court, which requires citations to the record to support arguments and factual assertions].)

Having found that the first argument that Wells Fargo was not the beneficiary of the deed of trust lacked merit, we turn to the Kalnokis' second contention that the promissory note was never endorsed or delivered and thus never properly assigned to Wells Fargo or U.S. Bank. They cite *Saxon Mortgage Services, Inc. v. Hillery* (N.D. Cal. 2008) 2008 WL 5170180 at *5 (*Saxon*), an unpublished federal decision that found an assignment of a deed of trust and note to a third party from the lender's nominee in the deed of trust did not give the party standing to assert a claim to enforce the note in the bankruptcy court because no evidence showed the lender ever assigned the note to the nominee or gave it authority to assign the note to another party.

*Saxon* is distinguishable from the present case where the assets of the original lender and beneficiary, Wells Fargo Home Mortgage, Inc., were acquired by Wells Fargo

28

through the merger approved by the comptroller of the currency. (12 U.S.C. § 215a, subd. (e) ["The receiving association, upon the merger and without any order or other action on the part of any court or otherwise, shall hold and enjoy all rights of property, franchises, and interests, . . . , and all other rights and interests . . . , in the same manner and to the same extent as such rights, franchises, and interests were held or enjoyed by any one of the merging banks or banking associations at the time of the merger. . . ."].) Wells Fargo, in turn, transferred all its interest in both the deed of trust *and* the promissory note to U.S. Bank. The Assignment provides in relevant part: Wells Fargo "grants, assigns, and transfers to: [U.S. Bank] all beneficial interest under that certain Deed of Trust dated: 02/10/2004 executed by ANDREW G. KALNOKI AND KATHI L. KALNOKI . . . together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust."

To the extent the Kalnokis claim Wells Fargo and U.S. Bank had to physically possess the note to foreclose, other courts have rejected such argument. (See e.g., *Siliga, supra,* 219 Cal.App.4th at p.84, fn.5, disapproved on other grounds in *Yvanova, supra,* 62 Cal.4th at p. 939, fn.13 [there is no legal basis for the claim that the foreclosing party must possess the original note]; *Shuster v. BAC Home Loans Servicing, LP* (2012) 211 Cal.App.4th 505, 511 (*Shuster*) [rejecting claim that defendants had no right to foreclose because they were not the "holder in due course" of the promissory note]; *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 441 (*Debrunner*) [provisions of Uniform Commercial Code pertaining to negotiable instruments do not "displace the detailed, specific, and comprehensive set of legislative procedures the Legislature has established for nonjudicial foreclosures"].) In *Jenkins, supra,* 216 Cal.App.4th at pp. 510, 513, disapproved on other grounds in *Yvanova, supra,* 62 Cal.4th at p. 939, fn.13, for example, the plaintiff complained that the trustee did not have actual physical possession of the note and deed of trust prior to the closing date of the investment trust, but the appellate court held that the nonjudicial foreclosure

29

provisions did not require the foreclosing party to have an actual beneficial interest in the deed of trust and promissory note to commence and execute a nonjudicial foreclosure sale.

The Kalnokis' next contention--that the Assignment is void due to a securitization fail under New York law, which they allege governs the Bear Stearns securitized trust--is likewise without merit. According to the Kalnokis, the Bear Stearns securitized trust closed on February 28, 2005. Wells Fargo did not execute the Assignment to U.S. Bank as trustee for the Bear Stearns securitized trust until June 16, 2010. By that time, the Kalnokis' mortgage was in default. Because the securitized trust had already closed when it was assigned their delinquent mortgage, the Kalnokis allege that the Assignment violated the terms of the Bear Stearns securitized trust's pooling and servicing agreement, did not convey any interest to U.S. Bank, and violated the REMIC guidelines under the tax code. All of this, they claim, renders the Assignment void.

The trial court found the Kalnokis lacked standing to raise this issue since they were not parties to the securitized trust's pooling and servicing agreement. The California Supreme Court, however, recently held that a borrower has standing to sue for wrongful foreclosure where an alleged defect in the assignment renders the assignment void even if a borrower is not a party to the assignment. (*Yvanova, supra,* 62 Cal.4th at pp. 942-943.) The Supreme Court expressed no opinion as to whether, under New York law, an untimely assignment to a securitized trust made after the trust's closing date is void or merely voidable. (*Id.* at pp. 940-941.) We turn to that issue now.

The Kalnokis rely on *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079 (*Glaski*), for the proposition that an assignment of a deed of trust to a securitized trust governed by New York law that is made after the trust's closing date is void. (*Glaski,* at pp. 1083, 1097.) Like in *Glaski*, they cite New York Estates, Powers and Trusts Law section 7-2.4, which provides that "[i]f the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance, or other act of the trustee in

contravention of the trust, except as authorized by this article and by any other provision of law, is void." The *Glaski* court read literally the term "void" in Section 7-2.4, to hold that the plaintiff had standing to challenge violations of the pooling and servicing agreement. (*Glaski,* at pp. 1096-1097.)

As *Glaski* noted, however, its holding was at odds with numerous decisions finding that a plaintiff lacks standing to challenge the validity of the securitization process because any alleged irregularities merely render such an assignment voidable not void. (*Glaski, supra,* 218 Cal.App.4th at pp. 1096-1097.) The trial court decision upon which *Glaski* relied has also since been overturned. (*Wells Fargo Bank, N.A. v. Erobobo* (N.Y. App. Div. 2015) 127 A.D.3d 1176, 1178.)

We decline to follow *Glaski* and instead conclude that an assignment to a securitized trust made after the trust's closing date is merely voidable. As a recent New York appellate court concluded: "the weight of New York authority is contrary to plaintiffs' contention that any failure to comply with the terms of the PSAs [pooling and services agreements] rendered defendants' acquisition of plaintiffs' loans and mortgages void as a matter of trust law." (*Rajamin v. Deutsche Bank Nat'l Trust Co.* (2d. Cir. 2014) 757 F.3d 79, 88-89 (*Rajamin*).) Instead, "an unauthorized act by the trustee is not void but merely voidable by the beneficiary." (*Ibid.*)

Because any alleged irregularities in the securitization process are merely voidable at the securitized trust beneficiary's behest, and the Kalnokis are not beneficiaries of the Bear Stearns securitized trust, they lack standing to challenge the Assignment on such grounds. (*Rajamin, supra,* 757 F.3d at pp. 88-89.) Thus, even if we assume the truth of the Kalnokis' allegations regarding the purported securitization fail, such allegations are insufficient to set aside the foreclosure. (See *Saterbak v. JPMorgan Chase Bank, N.A.* (2016) 245 Cal.App.4th 808, 815, fn. 5 (*Saterbak*) [declining to follow *Glaski* on similar grounds].)

31

Finally, the Kalnokis' contention in their reply brief that an employee of Loanstar, rather than FATCO, executed the Assignment on Wells Fargo's behalf is unavailing. The Kalnokis' cite no evidence in the record to support this argument. We therefore disregard it. (*Duarte, supra,* 72 Cal.App.4th at p. 856 ["If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived"]; *Fox, supra,* 99 Cal.App.2d at p. 742 [counsel has duty to refer reviewing court to portion of record to which he objects].) We briefly note, however, that elsewhere the Kalnokis allege Loanstar was Wells Fargo's agent. Thus, we fail to see the harm of an employee of Wells Fargo's admitted agent executing the Assignment.

C.     The Notice of Sale

The Kalnokis contend the Notice of Sale was fraudulent because the Assignment to U.S. Bank was invalid. In their view, U.S. Bank never received any interest in the Kalnokis' deed of trust or note, and, therefore, U.S. Bank had no authority to foreclose. But, as discussed above, the Kalnokis have failed to allege any viable theory as to why the Assignment to U.S. Bank is void. As the current beneficiary of record of the deed of trust following the Assignment, U.S. Bank was authorized to demand the trustee foreclose on the Kalnokis' property. (*Yvanova, supra,* 62 Cal.4th at p. 926 [" 'If the debtor defaults on the loan, the beneficiary may demand that the trustee conduct a nonjudicial foreclosure sale' "].)

They also challenge the validity of the declaration of Marsha Graham, which is attached to the Notice of Sale. The declaration provides that Wells Fargo Home Mortgage, Inc. had obtained an exemption under Civil Code section 2923.53 from California's required 90-day wait period between issuing the notice of default and the notice of trustee's sale under former Civil Code section 2923.52. (Former Cal. Civ. Code, § 2923.52 [repealed by Stats. 2009-2010, 2nd Ex.Sess., ch. 5, § 3, operative Jan. 1,

32

2011].)  They contend that a defunct company like Wells Fargo Home Mortgage, Inc. could not obtain such an exemption.  Even if that is true, the record shows Wells Fargo was similarly exempt.

D.    The Trustee's Deed Upon Sale

The Kalnokis allege the Trustee's Deed Upon Sale is invalid because U.S. Bank was not the beneficiary under the Assignment, an argument we have already rejected, and also because U.S. Bank did not pay anything for the property at the trustee's sale.  They also allege, without elaboration, that the Trustee's Deed Upon Sale falsely states that all of the requirements of Civil Code section 2924 were fully met.

"At a nonjudicial foreclosure sale, if the lender chooses to bid, it does so in the capacity of a purchaser.  [Citation.]  The only distinction between the lender and any other bidder is that the lender is not required to pay cash, but is entitled to make a credit bid up to the amount of the outstanding indebtedness.  [Citations.]  The purpose of this entitlement is to avoid the inefficiency of requiring the lender to tender cash which would only be immediately returned to it."  (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1238 (*Alliance Mortgage*).)

"A 'full credit bid' is a bid 'in an amount equal to the unpaid principal and interest of the mortgage debt, together with the costs, fees, and other expenses of the foreclosure.' "  (*Alliance Mortgage, supra,* 10 Cal.4th at p. 1238.)  "If the full credit bid is successful, i.e., results in the acquisition of the property, the lender pays the full outstanding balance of the debt and costs of foreclosure to itself and takes title to the security property, releasing the borrower from further obligations under the defaulted note."  (*Ibid.*)

As the beneficiary of the deed of trust and the note following the Assignment, U.S. Bank was entitled to make a credit bid at the trustee's sale up to the amount of the debt owed.  (*Alliance Mortgage, supra,* 10 Cal.4th at p. 1238.)  The total amount of the unpaid

33

debt together with costs was $437,280.54. That was the amount of U.S. Bank's credit bid. There was nothing wrongful about U.S. Bank using a credit bid rather than paying cash at the sale.

The purchaser at a nonjudicial foreclosure sale generally "receives title under a trustee's deed free and clear of any right, title or interest of the trustor." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 831 (*Moeller*).) "If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser." (*Ibid.*)

In this case, the Trustee's Deed Upon Sale recites that the statutory requirements under Civil Code section 2924 have been met. The deed specifically provides, "All requirements of law and the applicable Deed of Trust including, but not limited to those enumerated by Civil Code 2924 et. seq., regarding the mailing, publication, personal delivery and posting of the Notice of Default and Notice of Sale, as respectively appropriate, have been met." Beyond their conclusory allegation that the recital in the Trustee's Deed Upon Sale is false, the Kalnokis cite nothing to rebut the ordinary presumption that the sale was conducted regularly.

E. The Notice of Default

The Kalnokis contend that the Notice of Default and its attached declaration are void and fail to comply with Civil Code section 2924 because they were purportedly robo-signed. According to the second amended complaint, the declaration attached to the Notice of Default attesting that the statutory notice procedures under Civil Code section 2923.5 were followed was robosigned by John Kennarty, an employee of Wells Fargo, without his having read the contents of the declaration. They also claim that his signature was forged by someone claiming to be John Kennarty. The Kalnokis alleged in their

34

complaint that Wells Fargo was fully aware of and affirmed Kennarty's actions as a robosigner.

For purposes of the demurrers, we will accept as true the factual allegation that the default declaration was "robosigned." But the assumed facts that Kennarty signed the default declaration without reading the document or that someone else signed it on his behalf are not enough to set aside the foreclosure. (*Sandri v. Capitol One, N.A.* (N.D. Cal. 2013) 501 B.R. 369, 373-374.) " 'As to the robo-signer allegations, there does not appear to be anything about "robo-signing" the notice of default or the notice of substitution that makes them invalid or ineffective. Even if true, "robo-signing" does not have any bearing on the validity of the foreclosure process here.' " (*Id.* at p. 374.) That is because the Kalnokis do not dispute the accuracy of any of the salient facts, such as the amount owed or that their loan was in default.

The Kalnokis, moreover, allege that Kennarty was acting on behalf of the beneficiary--Wells Fargo--and that Wells Fargo was fully aware of its agent's actions. The Kalnokis even allege that Wells Fargo "affirmed them as proper." Thus, by their own allegations, the Kalnokis negate any inference that Wells Fargo did not authorize Kennarty or someone else to robosign the Notice of Default's supporting declaration.

And, to the extent the default declaration was in fact robosigned, "it would be voidable, not void, at the injured party's option." (See *Maynard v. Wells Fargo Bank, N.A.*, 2013 WL 4883202, at *8-9 (S.D. Cal. 2013).) Here, the injured party would have been Wells Fargo, not the Kalnokis.

Moreover, even assuming for sake of argument that Wells Fargo was not the beneficiary at the time it initiated the foreclosure proceedings as the Kalnokis allege, they nonetheless concede Wells Fargo was the loan servicer. As the loan servicer--the beneficiary's agent--Wells Fargo was empowered to proceed with foreclosure on the beneficiary's behalf by recording the Notice of Default. (§§ 2924, subd. (a)(1) [trustee,

35

mortgagee, or beneficiary, or any of their authorized agents may file a notice of default to initiate foreclosure]; 2304 [agent authorized to do any acts which principal may do].)

F.      Tender

In its ruling sustaining the joint demurrer of FATCO and Loanstar, the trial court determined the Kalnokis were required to tender the amount owing on the debt to maintain an action challenging the foreclosure sale.  The Kalnokis contend this was error.

Generally, "as a condition precedent to an action by the borrower to set aside the trustee's sale on the ground that the sale is voidable because of irregularities in the sale notice or procedure, the borrower must offer to pay the full amount of the debt for which the property was security." (*Lona, supra,* 202 Cal.App.4th at p. 112.)  " 'The rationale behind the rule is that if [the borrower] could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the [borrower].' " (*Ibid.*)

There are, however, recognized exceptions to the tender rule.  (*Lona, supra,* 202 Cal.App.4th at p. 112.)  Courts have found that tender is not required where the borrower attacks the validity of the underlying debt (*Stockton v. Newman* (1957) 148 Cal.App.2d 558, 564 [trustor sought rescission of the contract to purchase the property and the promissory note on grounds of fraud]), where the borrower has a counterclaim or set-off against the beneficiary (*Hauger v. Gates* (1954) 42 Cal.2d 752, 755 [plaintiff claimed set-off in an amount exceeding the amount due on the note where defendant had failed to deliver personal property under parties' agreement that was valued at an amount greater than installment payment owing on note]), where it would be inequitable to impose the requirement (*Humboldt Sav. Bank v. McCleverty* (1911) 161 Cal.285, 291 [inequitable to require widow to tender full amount of debt for which she was not liable in order to protect her homestead interest in property]), and where the trustee's deed is void on its face. (*Dimock, supra,* 81 Cal.App.4th at pp. 877-878.)

36

In this case, the Kalnokis admit in the second amended complaint that the underlying debt is valid. They also do not allege any entitlement to a set-off. Unlike in *Humboldt*, where the plaintiff did not owe the debt, we do not consider it "inequitable" to apply the tender rule here as the Kalnokis concede they owed the debt. Finally, apart from the Kalnokis' conclusory allegations, there is nothing on the face of the Trustee's Deed of Sale showing that it is void. The recorded documents attached as exhibits to the second amended complaint as well as the merger documents subject to judicial notice establish an unbroken chain of ownership from Wells Fargo Home Mortgage, Inc., to Wells Fargo by merger, to U.S. Bank as trustee for the Bear Stearns Securitized trust by assignment.

And, as discussed above, even assuming Wells Fargo assigned the deed of trust and note to U.S. Bank after the Bear Stearns securitized trust closed, that fact makes the Assignment voidable rather than void. (*Rajamin, supra,* 757 F.3d at pp. 88-89; *Saterbak v. JPMorgan Chase Bank, N.A., supra,* 245 Cal.App.4th at p. 816, fn. 5.) Under such circumstances, the Kalnokis acknowledge tender is required. ([Tender rule only applies to cases where the foreclosure sale is voidable].)

Because none of the exceptions to the tender rule apply, the trial court did not err in determining that the Kalnokis were required to tender the full amount of the debt owed before challenging the foreclosure sale. The allegations of the second amended complaint concede they did not tender the full amount, nor could they.

G. Prejudice

The Kalnokis' challenge to the foreclosure sale also fails for a more fundamental reason. They cannot establish prejudice.

" '[A] plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests.' " (*Herrera v. Federal National, supra,* 205 Cal.App.4th at p. 1507,

disapproved on other grounds in *Yvanova, supra,* 62 Cal.4th at p. 939 & fns. 4, 13.) "A nonjudicial foreclosure sale is presumed to have been conducted regularly and fairly; one attacking the sale must overcome this common law presumption 'by pleading and proving an improper procedure *and the resulting prejudice.*' " (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 86, fn. 4, italics added.) "Prejudice is not presumed from 'mere irregularities' in the process." (*Herrera v. Federal National, supra,* 205 Cal.App.4th at p. 1507.)

Even if Wells Fargo lacked authority to assign the note and deed of trust to U.S. Bank as trustee for the Bear Stearns securitized trust, it is difficult to conceive how the Kalnokis were prejudiced by the Assignment. "Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor." (*Herrera v. Federal National, supra,* 205 Cal.App.4th at p. 1507; *Fontenot, supra,* 198 Cal.App.4th at p. 272.)

An assignment merely substituted one creditor for another, without changing the Kalnokis' obligations under the note. The Kalnokis do not dispute that they defaulted on their loan. They have pleaded no facts indicating that the foreclosure sale, which has already occurred, would have been averted but for the alleged deficiencies in the foreclosure process nor that the original lender would have refrained from foreclosure under the circumstances presented. Indeed, they concede in their briefing that whenever a loan is in default, like theirs, the trustee has only one duty--to foreclose on the deed of trust. Similarly, the Kalnokis have not alleged that the transfer to U.S. Bank interfered in any manner with their payment of the note. (*Herrera v. Federal National, supra,* 205 Cal.App.4th at p. 1507; *Fontenot, supra,* 198 Cal.App.4th at p. 272.) Again, they concede they fell behind on their payments and did not have the ability to tender the full amount owing before the Assignment to U.S. Bank.

Although not entirely apparent from the briefs, it appears the Kalnokis' attempt to establish prejudice from the alleged irregularities in the foreclosure process by arguing

38

they are exposed to double financial jeopardy.  They claim Freddie Mac could sue them at a later time to collect on the promissory note, which secured the deed of trust.  In support of their argument, they continue to contend that physical possession of the promissory note was required to foreclose.

"California has an elaborate and interrelated set of foreclosure and antideficiency statutes relating to the enforcement of obligations secured by interests in real property." (*Alliance Mortgage, supra,* 10 Cal.4th at p. 1236.)  Pursuant to this exhaustive statutory scheme, "there is only 'one form of action' for the recovery of any debt or the enforcement of any right secured by a mortgage or deed of trust."  (*Ibid.*)  That action is foreclosure.  (*Ibid.*)

A nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender.  (*Moeller, supra,* 25 Cal.App.4th at p. 831.)  After the property is sold at a nonjudicial foreclosure sale, the borrower is released from further obligations under the defaulted note.  (*Alliance Mortgage, supra,* 10 Cal.4th at p. 1238; *Yvanaova, supra,* 62 Cal.4th at p. 927 ["Generally speaking, the foreclosure sale extinguishes the borrower's debt; the lender may recover no deficiency"].)  Because the property has already been sold at a nonjudicial foreclosure sale, there is no risk of double jeopardy for the Kalnokis.

We recognize that our colleagues in Division 1 of the Fourth Appellate District recently held that "a homeowner who has been foreclosed on by one with no right to do so--by those facts alone--sustains prejudice or harm sufficient to constitute a cause of action for wrongful foreclosure."  (*Sciarratta v. U.S. Bank National Assoc.* 247 Cal.App.4th 552, 555 (*Sciarratta*).)  Thus, contrary to *Herrera National* and *Fontenot*, the homeowner need not allege that the wrongful foreclosure interfered with his or her ability to pay on the debt or that the foreclosure otherwise would not have occurred.  (*Id.* at pp. 555, 562-564.)

The plaintiff in *Sciarratta* sued to challenge Bank of America's foreclosure of her home. The complaint alleged that Chase assigned the homeowner's promissory note and deed of trust to Deutsche Bank in April 2009. Six months later, in November 2009, Chase recorded a purported assignment of the same trust deed and promissory note to Bank of America. The homeowner alleged the second purported assignment from Chase was void as it had nothing left to assign, and, thus, the foreclosure by Bank of America was wrongful. Because the wrong entity foreclosed, she alleged she was prejudiced. (*Id., supra,* 247 Cal.App.4th at p. 562.)

The court in *Sciarratta* found that publicly recorded documents properly subject to judicial notice were consistent with the complaint's allegations. (*Sciarratta, supra,* 247 Cal.App.4th at p. 562.) Here, by contrast, the publicly recorded documents conflict with the Kalnokis' contention in their second amended complaint, not pressed on appeal, that EMC Mortgage Corporation owned the promissory note and deed of trust, as well as their new allegation, not alleged in the second amended complaint, that Wells Fargo Asset Securities Corporation owned by the note and deed of trust. Thus, even assuming for sake of argument that prejudice can be established simply by alleging facts showing the wrong party foreclosed as found in *Sciarratta*, the judicially noticeable documents in this case show the proper party foreclosed notwithstanding the Kalnokis' conflicting allegations.

VI

*Business and Professions Code Section 17200*

The Kalnokis' second cause of action alleged defendants engaged in numerous unlawful, unfair, and fraudulent business practices in violation of Business and Professions Code section 17200. According to the second amended complaint, such acts included instituting premature foreclosure proceedings to generate unwarranted fees, executing and recording false and misleading documents without legal authority to do so,

40

failing to disclose the principle for which documents were being executed and recorded in violation of Civil Code section 2933, violating unspecified securities laws, tax laws, and common law, acting as beneficiaries and trustees without the legal authority to do so, failing to give proper notice of a trustee's sale, failing to comply with Civil Code section 2923.5, failing to comply with the HAMP[1] guidelines, misrepresenting the foreclosure status of properties to borrowers, and other unidentified deceptive business practices.

On appeal, the Kalnokis argue they have sufficiently pleaded a Business and Professions Code section 17200 violation because "all the statutory elements are set forth in the SAC, and there was major fraud involved in this foreclosure." They claim U.S. Bank was a stranger to the transaction and obtained their property through fraud. We disagree.

Sections 17200 through 17210 of the Business and Professions Code do not have a specific statutory title, but have been referred to as the unfair competition law (UCL). (*Jenkins, supra,* 216 Cal.App.4th at p. 520, disapproved on other grounds by *Yvanova, supra,* 62 Cal.4th at p. 939, fn. 13.) The UCL " 'prohibits, and provides civil remedies for, unfair competition.' " (*Ibid.*) The UCL creates " ' "three varieties of unfair competition--acts or practices which are *unlawful*, or *unfair*, or *fraudulent*." ' " (*Ibid.*) The UCL's unlawful prong " ' " 'borrows' " ' " violations of other laws and treats them as unlawful practices that the UCL makes independently actionable. (*Ibid.*)

In 2004, voters passed Proposition 64, which restricted private standing to bring a UCL action to " 'a person who has *suffered injury in fact* and has *lost money or property*

---

[1] "[T]he United States Department of the Treasury implemented the Home Affordable Mortgage Program (HAMP) to help homeowners avoid foreclosure during the housing market crisis of 2008. 'The goal of HAMP is to provide relief to borrowers who have defaulted on their mortgage payments or who are likely to default by reducing mortgage payments to sustainable levels, without discharging any of the underlying debt.' " (*West v. JPMorgan Chase Bank, N.A., supra,* 214 Cal.App.4th at p. 785.)

as a *result* of the unfair competition.' " (*Jenkins, supra,* 216 Cal.App.4th at p. 521; Bus. & Prof. Code, § 17204, italics added, as amended by Prop. 64, § 3, as approved by voters, Gen. Elec. (Nov. 2, 2004).) " 'To satisfy the narrower standing requirements imposed by Proposition 64, a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim.' " (*Jenkins,* at p. 521; *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322.) "A UCL claim will survive a demurrer if the plaintiff can plead ' "general factual allegations of injury resulting from the defendant's conduct." ' " (*Jenkins,* at p. 521.)

While losing one's home in a nonjudicial foreclosure sale arguably qualifies as a sufficient "economic injury" for purposes of Business and Professions Code section 17204 (*Jenkins, supra,* 216 Cal.App.4th at p. 522 [alleged diminishment of a future property interest by impending foreclosure of plaintiff's home sufficient to establish minimal pleading requirements for economic injury prong of UCL claim]), the Kalnokis cannot establish the second prong of the standing requirements--causation. They were required to plead a causal link between their economic injury, the loss of their home at the foreclosure sale, and the myriad unfair or unlawful acts allegedly committed by defendants. (Bus. & Prof. Code, § 17204; *Jenkins,* at p. 523.) This they cannot do.

The Kalnokis admit in their second amended complaint and opening brief that they defaulted on their loan and were unable to make the monthly payments due to illness. It is indisputable that the Kalnokis' default triggered the lawful enforcement of the power of sale clause in the deed of trust, and it was the triggering of the power of sale clause that subjected the Kalnokis' home to nonjudicial foreclosure. (*Jenkins, supra,* 216 Cal.App.4th at p. 523 [borrower in default could not establish causation prong for standing under Business and Professions Code section 17204 because default on loan triggered foreclosure and not the recording of any allegedly fraudulent foreclosure-related

42

documents].)  As the Kalnokis' home was subject to nonjudicial foreclosure because of their default on their loan, which occurred before defendants' alleged wrongful acts, the Kalnokis cannot assert the foreclosure (i.e., their alleged economic injury) was caused by defendants' wrongful actions.  (*Ibid.*)

Thus, even if we assume the Kalnokis' second cause of action alleges facts indicating defendants' actions violated at least one of the UCL's three unfair competition prongs (unlawful, unfair, or fraudulent)--something the trial court declined to do, the second amended complaint cannot show any of the alleged violations have a causal link to their economic injury.  The trial court, therefore, did not err in sustaining the demurrer without leave to amend the UCL cause of action.  (*Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031 [appellate court "will affirm if there is any ground on which the demurrer can properly be sustained, whether or not the trial court relied on proper grounds or the defendant asserted a proper ground in the trial court proceedings"].)

VII

*Conspiracy*

The Kalnokis' third cause of action alleged defendants engaged in a civil conspiracy to commit fraud against them.  They point to the allegedly fraudulent Substitution and Assignment as establishing the conspiracy.

To establish liability of a defendant for wrongs committed by another as part of a conspiracy, a plaintiff must allege the formation and operation of the conspiracy, the wrongful act done pursuant to the conspiracy, and resulting damage.  (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1581.)  The conspiring defendant must also have actual knowledge that a tort is planned and agree to the scheme with knowledge of its unlawful purpose.  (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 784-785.)

No cause of action for conspiracy exists unless the plaintiff pleads facts to show some wrongful act that would support a cause of action without conspiracy.  (*Jones v. Wells Fargo Bank* (2003) 112 Cal.App.4th 1527, 1541 (*Jones*); *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 511.)  Here, as the trial court found and as discussed above, the Kalnokis' conspiracy claim fails because they have not adequately pleaded the predicate tort of fraud.

VIII

*Declaratory Relief*

The Kalnokis' fourth cause of action is for declaratory relief.  They allege a controversy regarding the ownership of the property arose because the foreclosure documents were purportedly fraudulent.  In cursory fashion, they argue on appeal that they have sufficiently alleged a cause of action for declaratory relief because an actual controversy exists as to whether they or U.S. Bank own the property and they cite the unlawful detainer as evidence of the dispute.

Code of Civil Procedure section 1060 authorizes "[a]ny person . . . who desires a declaration of his or her rights or duties with respect to another . . . in cases of actual controversy relating to the legal rights and duties of the respective parties, [to] bring an original action . . . for a declaration of his or her rights and duties . . . ."  (Code Civ. Proc., § 1060.)  However, "[t]he purpose of a judicial declaration of rights in advance of an actual tortious incident is to enable the parties to shape their conduct so as to avoid a breach.  '[Declaratory] procedure operates prospectively, and not merely for the redress of past wrongs.  It serves to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs; in short, the remedy is to be used in the interests of preventive justice, to declare rights rather than execute them.' [Citations.]"  (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 848 (*Babb*).)

44

In this case, plaintiffs seek a remedy for a past wrong, the sale of their home by foreclosure. Declaratory relief is therefore inappropriate. (*Babb, supra,* 3 Cal.3d at p. 848.) In the absence of factual allegations indicating an actual present controversy, as opposed to the redress of a past wrong, plaintiffs have failed to state a cause of action for declaratory relief.

IX

*Civil Code Section 2932.5*

The Kalnokis' fifth cause of action asserts defendants violated Civil Code section 2932.5. They argue that because the Assignment was purportedly "fraudulently manufactured," defendants did not comply with Civil Code section 2932.5.

Section 2932.5 states, "Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee *if the assignment is duly acknowledged and recorded.*" (Italics added.) " 'It has been established since 1908 that this statutory requirement that an assignment of the beneficial interest in a debt secured by real property must be recorded in order for the assignee to exercise the power of sale applies only to a mortgage and not to a deed of trust.' " (*Rossberg, supra,* 219 Cal.App.4th at p. 1497; see also *Calvo v. HSBC Bank USA, N.A.* (2011) 199 Cal.App.4th 118, 122 (*Calvo*).) Accordingly, nothing in section 2932.5 rendered the foreclosure invalid as the statute is inapplicable in the present case.

The Kalnokis cite one bankruptcy court decision, *U.S. Bank N.A. v. Skelton (In re Salazar)* (U.S.B.C. S.D. Cal. 2011) 448 B.R. 814, 820, in support of their argument that Civil Code section 2932.5 applies to deeds of trust. (Citing *U.S. Bank N.A. v. Salazar,* 10-17456-MM13 (S.D. Bankr. Ct 2011).) As Wells Fargo and U.S. Bank point out,

however, that decision has since been overturned on appeal. (See *U.S. Bank N.A. v. Salazar (In re Salazar)* (S.D. Cal. 2012) 470 B.R. 557, 560-561.) The appellate court expressly found that Civil Code "[section] 2932.5 does not apply to deeds of trust." (*Id.* at p. 560.)

Similarly, the Kalnokis' reliance on Civil Code section 2924.10 is also misplaced. That statute was enacted as part of the California Homeowner Bill of Rights, which took effect on January 1, 2013. (Stats. 2012, ch. 86, § 13; see also Cal. Const., art. IV, § 8, subd. (c)(1) [effective date of new statutes is January 1, following 90 days after enactment]; *Rockridge Trust v. Wells Fargo, N.A.* (N.D. Cal. 2013) 985 F.Supp.2d 1110, 1152 (*Rockridge*); *Lueras, supra,* 221 Cal.App.4th at p. 86, fn.14.) A statute operates prospectively unless the Legislature *expressly* declares it is to be applied retroactively. (*Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 840.) There is no express declaration of retroactivity in the Homeowner Bill of Rights. (*Rockridge,* at p. 1152.) Because the Kalnokis' home was sold at a nonjudicial foreclosure sale in 2011, nearly two years before the Homeowner Bill of Rights took effect, Civil Code section 2924.10 does not apply.

X

*Unjust Enrichment*

The Kalnokis' eighth cause of action alleges U.S. Bank and the Bear Stearns securitized trust were unjustly enriched by $437,000--the approximate value of the property at the time of the foreclosure sale--because they did not pay anything for the property at the foreclosure sale. Their opening brief does not elaborate on this claim beyond the above summary.

The elements for a claim of unjust enrichment are " 'receipt of a benefit and unjust retention of the benefit at the expense of another.' " (*Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1132 (*Prakashpalan*).) " 'The theory of

46

unjust enrichment requires one who acquires a benefit which may not justly be retained, to return either the thing or its equivalent to the aggrieved party so as not to be unjustly enriched.' " (*Ibid.*) Strictly speaking, it is not "a theory of recovery, ' "but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so." [Citation.] . . . It is synonymous with restitution.' " (*Ibid.*) Ordinarily, restitution is required only if " ' "the benefits were conferred by mistake, fraud, coercion or request." ' " (*Ibid.*)

We have already concluded that the Kalnokis have failed to allege any basis for setting the Assignment to U.S. Bank aside as void. And, as noted above, U.S. Bank, as the beneficiary of the deed of trust and the note following the Assignment, was entitled to make a credit bid at the trustee's sale up to the amount of the debt owed. (*Alliance Mortgage, supra,* 10 Cal.4th at p. 1238.) Thus, U.S. Bank was not unjustly enriched as a result of the trustee's sale.

XI

*Civil Code Section 2923.5*

The amended complaint's third cause of action alleged defendants violated Civil Code section 2923.5 because the default declaration signed by John Kennarty in support of the Notice of Default did not show he had personal knowledge of the conclusions stated in the declaration. On appeal, the Kalnokis reassert their claim that Kennarty robosigned the declaration as the basis of the court's purported error in sustaining the demurrer to this cause of action. Imbedded under a different heading in the opening brief, the Kalnokis also assert that the Notice of Default failed to allow the time allotted by Civil Code section 2923.5. They also argue that a cause of action for violation of section 2923.5 can never be resolved through demurrer.

"In 2008, the Legislature enacted Civil Code section 2923.5 in response to the foreclosure crisis. (Stats. 2008, ch. 69, §§ 1, 2.) It prohibits filing a notice of default

47

until 30 days after the lender contacts the borrower 'to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.' " (*Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 525-526 (*Stebley*).) Section 2923.5, however, "does not provide for damages, or for setting aside a foreclosure sale. . . ." (*Ibid.*) Instead, the sole available remedy is "more time" before a foreclosure sale occurs. (*Ibid.*) After a nonjudicial foreclosure sale, the statute provides no relief. (*Ibid.*; see also *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 235-236 (*Mabry*).)

In this case, the Kalnokis concede the property was sold at a foreclosure sale on February 22, 2011. Therefore, they cannot state a cause of action for violation of section 2923.5.

The allegations that Kennarty did not have personal knowledge of the contents of the declaration are also unavailing. The declaration required by section 2923.5 need not be executed under penalty of perjury and the declaration's language may simply track the statutory language. (*Mabry, supra,* 185 Cal.App.4th at p. 214.) As the *Mabry* court noted, "[t]he way section 2923.5 is set up, too many people are necessarily involved in the process for any one person to likely be in the position where he or she could swear that all three requirements of the declaration required by subdivision (b) were met." (*Id.* at p. 233.)

Finally, their claim that a cause of action based on Civil Code section 2923.5 cannot be resolved on demurrer is incorrect. Courts often resolve similar claims on demurrer or motions to dismiss for failure to state a claim. (See e.g. *Rossberg, supra,* 219 Cal.App.4th at pp. 1493-1494 [finding the trial court properly sustained a demurrer to the plaintiffs' first cause of action for violation of section 2923.5 where the plaintiffs alleged they "had multiple telephone conversations with BofA regarding a possible loan modification during July 2009, which was more than 30 days before [the trustee] recorded the notice of default . . . ."]; *Ortiz v. Accredited Home Lenders, Inc.* (S.D.Cal. 2009) 639 F.Supp.2d 1159, 1165-1166 [dismissing section 2923.5 claim where plaintiffs

48

did not dispute contact was made and declaration of compliance indicated plaintiffs were contacted as required by the statute].)

Their reliance on *Skov v. U.S. Bank, National Assn.* (2012) 207 Cal.App.4th 690 (*Skov*) and *Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047 (*Intengan*) is likewise misplaced. In *Intengan*, the court specifically noted that the plaintiff's remedy for violating Civil Code section 2923.5 was limited to a delay in foreclosure. (*Intengan, supra,* 214 Cal.App.4th at p. 1058, fn.4.) The plaintiff did not allege that a trustee's sale had occurred and the respondent's brief on appeal represented that no sale had taken place. (*Id.* at p. 1050.) Since the foreclosure sale had not yet occurred in *Intengan*, and the plaintiff and the defendant had not yet explored foreclosure alternatives, the remedy under Civil Code section 2923.5 was still available. (*Id.* at pp. 1049-1050.) That is not the case here, as the Kalnokis concede the property was sold at a foreclosure sale in February 2011. *Skov* is distinguishable for the same reason. (*Skov, supra,* 207 Cal.App.4th at pp. 694, 696-697 [no allegation that foreclosure sale had taken place and plaintiff sought to permanently enjoin foreclosure of the property].)

XII

*Uniform Commercial Code*

The 11th cause of action in the amended complaint alleged a violation of Uniform Commercial Code Article 3-104, which generally defines the term "negotiable instrument." Briefly summarized, the Kalnokis alleged that defendants had to physically possess the promissory note before they could foreclose. The court dismissed the cause of action with prejudice stating that there was no requirement to "produce the note" in a nonjudicial foreclosure.

The Kalnokis contend that the court erred in ruling the Uniform Commercial Code does not apply to a nonjudicial foreclosure sale. In their opening brief, the Kalnokis contend, without citation to any particular provision, that Article 3 of the Uniform

49

Commercial Code governs the transfer of mortgages and notes to a securitized trust. Because the "Note with wet ink was not delivered or transferred to U.S. Bank," the Assignment was void and the debt obligation was nullified.

In asserting the 11th cause of action should not have been dismissed, the sum total of the Kalnokis' argument is as follows: "In the Eleventh Cause of Action of the Amended Complaint [(]CT Vol.-I, P60-61) a violation of the applicable sections of the Uniform Commercial Code was alleged in relation to the assignment of the Deed of Trust of the Kalnokis' Property. The dismissal of said cause of action with prejudice constituted prejudicial, reversible, judicial error."

As noted above, the argument advanced by the Kalnokis has repeatedly been rejected by numerous courts. In *Siliga*, the court held that there was no legal basis for the claim that the foreclosing party must possess the original note. (*Siliga, supra,* 219 Cal.App.4th at p. 84, fn. 5, disapproved on other grounds in *Yvanova, supra,* 62 Cal.4th at p. 939, fn.13.) Similarly, in *Shuster*, the court rejected a claim that the defendants had no right to foreclose because they were not the " 'holder in due course' " of the promissory note. (*Shuster, supra,* 211 Cal.App.4th at pp. 511-512.)

In *Debrunner*, the court concluded that provisions of the California Uniform Commercial Code pertaining to negotiable instruments do not apply to nonjudicial foreclosures. (*Debrunner, supra,* 204 Cal.App.4th at pp. 440-441.) Like the Kalnokis, the plaintiff in *Debrunner* argued an assignee must physically receive the promissory note and endorse it, or an assignment is " 'completely ineffective' and 'a legal nullity.' " (*Id.* at p. 439.) In rejecting the argument, the *Debrunner* court found that the "[p]laintiff's reliance on the California Uniform Commercial Code provisions pertaining to negotiable instruments is misplaced." (*Id.* at p. 440.) Noting that "[t]he comprehensive statutory framework established [in sections 2924 to 2924k] to govern nonjudicial foreclosure sales is intended to be exhaustive[,]" the court was "not convinced that the cited sections of the California Uniform Commercial Code

50

(particularly [section] 3301) displace[d] the detailed, specific, and comprehensive set of legislative procedures the Legislature has established for nonjudicial foreclosures." (*Id.* at pp. 440-441.)

We agree with *Debrunner* and the numerous other courts that have held a foreclosing party need not possess the note prior to foreclosing. (See e.g., *Spence v. Wells Fargo Bank, N.A.* 2011 WL 1668320, at *2 (E.D. Cal. May 03, 2011) [Commercial Code section 3301 has "no application in the instant context of real property financing"]; *Blanco v. Am. Home Mortg. Servicing.* 2010 WL 716311, at *2 (E.D. Cal. Feb. 26, 2010) [rejecting application of California Commercial Code section 3301 in mortgage context]; *Germon v. BAC Home Loans Servicing, L.P.* 2011 WL 719591, at *2 (S.D. Cal. 2011) ["the Commercial Code does not govern nonjudicial foreclosures under deeds of trust under California law"].) Because Civil Code section 2924, subdivision (a)(1) permits a notice of default to be filed by the "trustee, mortgagee, or beneficiary, or any of their authorized agents," and does not mandate physical possession of the underlying promissory note in order for this initiation of foreclosure.

## XIII

### *Rosenthal Act*

The Kalnokis contend the court erred in dismissing their 12th cause of action for violating the California Rosenthal Fair Debt Collection Practices Act (Rosenthal Act) as alleged in the amended complaint. (Civ. Code, § 1788.) The totality of their argument on appeal is as follows: "The dismissal of said cause of action with prejudice constituted prejudicial, reversible, judicial error. All of the Respondents herein were debt collectors and by their fraudulent and criminal acts while collecting a debt violated the mandate of the above Act."

Because the Kalnokis have not provided sufficient argument or citation to any legal authority for their contention that defendants violated the Rosenthal Act, we deem

51

the issue forfeited.  (*Nelson, supra,* 172 Cal.App.4th at p. 862 [court declined to address argument on issue that appellant had failed to provide more than a brief recitation of the argument in his brief without supporting authority].)  Even if not forfeited, however, the court did not err in sustaining the demurrers to the Kalnokis' 12th cause of action based on the Rosenthal Act.

The Rosenthal Act is intended "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts."  (Civ. Code, § 1788.1.)  Under the act, a "debt collector" is defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection."  (Civ. Code, § 1788.2, subd. (c).)  "Debt" is defined as "money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person."  (Civ. Code, § 1788.2, subd. (d).)

Numerous courts have held that the mere allegation that a defendant foreclosed on a deed of trust does not implicate the Rosenthal Act.  (See *Izenberg v. ETS Services, LLC* (2008) 589 F.Supp.2d 1193, 1199 (*Izenberg*) ["Because foreclosure does not constitute debt collection under the [Rosenthal Act], it does not appear that plaintiff can cure this deficiency"]; *Rockridge, supra,* 985 F.Supp.2d at pp. 1164-1165 [foreclosure allegation without more does not implicate Rosenthal Act]; *Reyes v. Wells Fargo Bank, N.A.* 2011 WL 30759, at *19 (N.D. Cal. Jan. 3, 2011) [collecting cases].)  The allegations in the amended complaint focus on the defendants' foreclosure of the Kalnokis' home.  Such allegations are insufficient to raise a valid cause of action under the act.

XIV

*Motions for Reconsideration and Leave to Amend*

The Kalnokis contend the court abused its discretion in denying their motion for reconsideration of the court's ruling sustaining the demurrer to the second amended

52

complaint filed by FATCO and Loanstar and their motion for leave to file a proposed third amended complaint. The proposed third amended complaint, they argue, "cogently sets forth numerous valid causes of action, which were also supported by the exhibits attached thereto and incorporated therein, yet the lower court disallowed the filing of said Complaint." Other than summarily concluding that the court's denial of the motions constituted an abuse of discretion, defendants do not set forth in what manner their pleading could be amended to state a viable cause of action, nor do they cite any new facts or any authority supporting amendments to specific causes of action.

FATCO and Loanstar argue that as a matter of law no appeal lies from an order denying a motion for reconsideration. Subdivision (g) of Code of Civil Procedure section 1008, however, provides: "An order denying a motion for reconsideration made pursuant to subdivision (a) is not separately appealable. However, if the order that was the subject of a motion for reconsideration is appealable, the denial of the motion for reconsideration is reviewable as part of an appeal from that order." Because the orders sustaining the demurrers without leave to amend were appealable following the entry of the dismissal judgments (Code Civ. Proc., § 904.1, subd.(a)(1); *Conley v. Roman Catholic Archbishop* (2000) 85 Cal.App.4th 1126, 1130), an order denying reconsideration of that same demurrer order may be reviewed as part of that appeal.

Code of Civil Procedure section 1008, subdivision (a) requires that a motion for reconsideration be based on new or different facts, circumstances, or law. (Code Civ. Proc., § 1008, subd. (a).) A party seeking reconsideration, moreover, must provide a satisfactory explanation for the failure to produce the evidence at an earlier time. (*New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212.) When a plaintiff files a motion for reconsideration of a court's decision sustaining a demurrer to a complaint without leave to amend, the court must determine whether the plaintiff's proposed amended complaint corrects the deficiencies in the original complaint. (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386-1387.)

53

"A trial court's ruling on a motion for reconsideration is reviewed under the abuse of discretion standard." (*New York Times, supra,* 135 Cal.App.4th at p. 212.)

Similarly, once a court concludes a complaint fails on any grounds stated in a demurrer, the court must consider whether there is a " ' "reasonable possibility" ' the complaint's defect(s) can be cured by an amendment." (*Jenkins, supra,* 216 Cal.App.4th at p. 506, disapproved on other grounds by *Yvanova, supra,* 62 Cal.4th at p. 939, fn. 13.) "If it is apparent the complaint's defects can be cured, the trial court has abused its discretion and we will reverse the judgment. [Citation.] Alternatively, if it is apparent the complaint's defects cannot be cured, no abuse of discretion has occurred and we will affirm the judgment." (*Id.* at p. 507.) The plaintiff bears the burden of proving the reasonable possibility of such a curative amendment. (*Ibid.*; *Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636-637 ["Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading"].) "Absent an effective request for leave to amend the complaint in specified ways, an abuse of discretion can be found ' "only if a potentially effective amendment were both apparent and consistent with the plaintiff's theory of the case." [Citation.]' " (*Jenkins,* at p. 507.)

On this record, we cannot say the trial court abused its discretion in denying the Kalnokis' request to reconsider the FATCO/Loanstar demurrer ruling or in denying leave to file the proposed third amended complaint. As proposed, the third amended complaint was an unwieldy 116 pages long with 752 separate paragraphs and 13 causes of action. Attached to the pleading were over 100 pages of exhibits. The proposed third amended complaint had "nearly doubled in size" from the second amended complaint.

In ruling on the motion for reconsideration, the trial court found the proposed third amended complaint did not state new facts because "they were essentially set forth in the opposition to the demurrer to the Second Amended Complaint" it also found that the "new law" the Kalnokis claimed gave rise to additional causes of action--the Homeowner

54

Bill of Rights--was not retroactive and did not become effective until January 1, 2013, well after the foreclosure sale in this case took place.

In denying the motion for leave to amend, the court found the Kalnokis again failed to comply with rule 3.1324 of the California Rules of Court, which identifies the required contents of a motion to amend a pleading and its supporting declaration. (Cal. Rules of Court, rule 3.1324, subds. (a), (b).) Although the Kalnokis "conced[ed] that the additions have 'changed each and every and/or all of the paragraphs and information on each, every and/or all lines on each, every and/or all pages in the Third Amended Complaint' and that 'in most instances the changes are significant, since all the facts and the legal theories were reformatted[,]' " the Kalnokis failed to state the particular allegations they proposed to add or how the "significant" changes to the pleading stated any viable cause of action.

A review of the proposed third amended complaint reveals that the Kalnokis had already raised the purportedly "new facts" in opposing the demurrers to the second amended complaint. And, as the trial court properly concluded and discussed more fully below, the Homeowner Bill of Rights is not retroactive. (*Rockridge, supra,* 985 F.Supp.2d at p. 1152.) Thus, the Kalnokis could not amend their complaint to allege valid causes of action based on the changed law.

We also find no abuse of discretion in requiring the Kalnokis to file a motion for leave to amend that complied with the California Rules of Court, particularly rule 3.1324. (*Hataishi v. First American Home Buyers Protection Corp.* (2014) 223 Cal.App.4th 1454, 1469 [trial court did not abuse its discretion in requiring the plaintiff to bring a motion to amend, compliant with the California Rules of Court, to which the defendant would have an opportunity to respond].) This is especially so given the voluminous nature of the proposed third amended complaint. At over 100 pages, the proposed pleading was cumbersome to say the least, making it critical that the Kalnokis specifically identify the proposed changes and the legal effect of the changes in order to

55

allow the defendants an opportunity to adequately respond to the motion and to permit the court to evaluate the pleading. The Kalnokis failed to do so.

Apart from this, we also conclude that none of the causes of action alleged in the second amended complaint could be amended to state viable causes of action. For the multiple fraud causes of action, at a minimum, the Kalnokis cannot establish damages or prejudice because none of the allegedly fraudulent documents caused them to default on their loan or otherwise prevented them from bringing the loan current. (*Herrera v. Federal National, supra,* 205 Cal.App.4th at p. 1507; *Fontenot, supra,* 198 Cal.App.4th at p. 272), and the publicly recorded documents do not show the wrong party foreclosed. (*Sciarratta, supra,* 247 Cal.App.4th at p. 562.) Likewise, in light of their previous allegations that they did not tender the full amount due and that they could not tender the amount because they lacked the financial resources to bring the amount current, it is doubtful they can amend their complaint to comply with the applicable tender rule. (*Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1034 [court "may consider the factual allegations of prior complaints, which a plaintiff may not discard or avoid by making ' " 'contradicatory averments, in a superseding, amended pleading.' " ' "].) Given that the fraud causes of action fail, so, too, does the derivative conspiracy cause of action. (*Jones, supra,* 112 Cal.App.4th at p. 1541.)

Because the Kalnokis' complaint largely rests on the allegedly fraudulent documents recorded during the foreclosure process--admittedly after they had already defaulted ([default in December 2009 due to health issues], [Notice of Default initiating foreclosure recorded April 2010])--they cannot establish causation for purposes of a Business and Professions Code section 17200 violation. (*Jenkins, supra,* 216 Cal.App.4th at p. 523 [borrower in default could not establish causation prong for standing under Business and Professions Code section 17204 because default on loan triggered foreclosure and not the recording of any allegedly fraudulent foreclosure-related documents].) Case law, moreover, establishes that Civil Code section 2932.5 does not

apply to deeds of trust (*Rossberg, supra,* 219 Cal.App.4th at p. 1497; *Calvo, supra,* 199 Cal.App.4th at p. 122), and that no remedy exists for any purported violation of Civil Code section 2923.5 once a foreclosure sale has occurred. (*Stebley, supra,* 202 Cal.App.4th at pp. 525-526; *Mabry, supra,* 185 Cal.App.4th at pp. 235-236 [after a nonjudicial foreclosure sale, section 2923.5 provides no relief].) Similarly, declaratory relief is improper to remedy a past wrong like the completed foreclosure sale here. (*Babb, supra,* 3 Cal.3d at p. 848.)

And there is no requirement that a creditor-beneficiary pay cash at a nonjudicial foreclosure sale to purchase the property secured by a deed of trust. (*Alliance Mortgage, supra,* 10 Cal.4th at p. 1238.) Allowing the Kalnokis to plead more detailed allegations regarding the bid would thus be unavailing.

Finally, neither the provisions of the Uniform Commercial Code nor the Rosenthal Act apply to a nonjudicial foreclosure of a deed of trust. (*Debrunner, supra,* 204 Cal.App.4th at pp. 440-441 [finding that provisions of the California Uniform Commercial Code pertaining to negotiable instruments do not apply to nonjudicial foreclosures]; *Izenberg, supra,* 589 F.Supp.2d at p. 1199 ["Because foreclosure does not constitute debt collection under the [Rosenthal Act], it does not appear that plaintiff can cure this deficiency"].)

The Kalnokis' attempt in the proposed third amended complaint to allege violations of the California Homeowner Bill of Rights is equally without merit. The "Homeowner Bill of Rights prohibits, among other things, 'dual track' foreclosures, which occur when a servicer continues foreclosure proceedings while reviewing a homeowner's application for a loan modification; requires a single point of contact for homeowners who are negotiating a loan modification; and expands notice required to be given to the borrower before the lender can take action on a loan modification or pursue foreclosure." (*Lueras, supra,* 221 Cal.App.4th at p. 86, fn. 14.) The Governor approved the legislation on July 11, 2012, and it became effective January 1, 2013. (Sen. Bill No.

57

900 (2011-2012 Reg. Sess.); Assem. Bill No. 278 (2011-2012 Reg. Sess.; see Stats. 2012, ch. 86, §§ 1-25; Stats. 2012, ch. 87, §§ 1-25.)  Its statutory provisions are not retroactive, however.  (*Rockridge, supra,* 985 F.Supp.2d at p. 1152.)  Because the Kalnokis' home was sold at a nonjudicial foreclosure sale in 2011, nearly two years before the Homeowner Bill of Rights took effect, the legislation does not apply.

Loanstar also points out that its acts of recording foreclosure documents and conducting the trustee's sale were protected by the privilege in Civil Code section 47, which applies to foreclosure proceedings through Civil Code section 2924(d).  (Civ. Code, § 2924, subds. (d)(1)-(3) ["All of the following shall constitute privileged communications pursuant to Section 47:  [¶]  (1) The mailing, publication, and delivery of notices as required by this section. [and]  [¶]  (2) Performance of the procedures set forth in this article. . . ."].)  That privilege generally bars any tort action based on a protected communication made without malice.  (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 336, 341(*Kachlon*).)  For purposes of the privilege, "malice is defined as actual malice, meaning ' "that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." ' "  (*Id.* at p. 336.)

The second amended complaint's conclusory allegations that Loanstar knew the Assignment violated the pooling and services agreement for the Bear Stearns securitized trust because it occurred five years after the trust closed, that the Assignment violated numerous state federal and contractual mandates, there was no monetary consideration paid at the time of the Assignment, and that the note was not transferred are insufficient to establish malice.  The second amended complaint contains no allegations as to how Loanstar purportedly knew this information.

Given the above, it is unlikely the Kalnokis could cure the deficiencies in any of their causes of action. The court, then, did not abuse its discretion in refusing to reconsider its ruling on the demurrer or denying them leave to amend a third time.

XV

*The Attorney Fees Appeal (Case No. C075062)*

In their second appeal, the Kalnokis challenge the trial court's order awarding defendants Wells Fargo and U.S. Bank $14,500 in attorney fees. The determination of entitlement to attorney fees is a question of law subject to de novo review. (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1213-1214.)

As Wells Fargo and U.S. Bank rightly note, the Kalnokis' appellate briefs largely rehash the same arguments discussed above on the demurrer rulings. We need not readdress such issues, but instead proceed to arguments concerning the propriety of the fee award.

The deed of trust and promissory note both contain provisions allowing for attorney fees under certain circumstances. Section 9 of the deed of trust, entitled "Protection of Lender's Interest in the Property and Rights Under this Security Instrument," provides in relevant part: "If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, [or] (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding . . . to enforce laws or regulations), . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument. . . . Lender's actions can include, but are not limited to . . . (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding."

59

Section 7, subdivision (E) of the promissory note provides, "If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees."

Under these two unilateral clauses, the Kalnokis agreed to pay attorney fees in any action instituted on the promissory note, and in any action affecting the security of the deed of trust or the rights or powers of the lender. Civil Code section 1717 makes these unilateral attorney fee clauses reciprocal (Civ. Code, § 1717, subd. (a)), and would have entitled the Kalnokis to attorney fees if they prevailed in an action on the note or deed of trust. (*Kachlon, supra,* 168 Cal.App.4th at p. 347.)

In arguing the attorney fees award was improper under the above provisions, the Kalnokis initially contend that neither Wells Fargo nor U.S. Bank are parties to the deed of trust or note and thus neither have privity of contract or standing to obtain fees based on the attorney fees provisions in those instruments. For reasons already discussed, we find the Kalnokis' "lack of privity" or "lack of standing" argument meritless.

The argument rests on the notion that neither Wells Fargo nor U.S. Bank as trustee for the Bear Stearns securitized trust obtained any interest in the promissory note or deed of trust from Wells Fargo Home Mortgage, Inc., the original lender and beneficiary. But, Wells Fargo succeeded to Wells Fargo Home Mortgage, Inc.'s interest in the note and deed of trust following their merger in 2004 (12 U.S.C. § 215a, subd. (e)), and Wells Fargo assigned the note and deed of trust to U.S. Bank as trustee for the Bear Stearns securitized trust in June 2010.

A successor in interest or assignee of a contract containing an attorney fees provision is entitled to recover attorney fees precisely as his predecessor in interest or assignor could have done. (See e.g., *Adjustment Corp. v. Marco* (1929) 100 Cal.App. 338, 343 [assignee entitled to recover attorney fees]; *Exarhos v. Exarhos*

60

(2008) 159 Cal.App.4th 898, 906 [successor in interest of decedent would have been entitled to attorney fees had he prevailed in action against bank based on agreement; because of mutuality of remedy principles under Civil Code section 1717, the successor in interest was liable for attorney fees as bank was the prevailing party].)  Thus, the fact that Wells Fargo and U.S. Bank were not the original lender or beneficiary under the deed of trust is irrelevant.

Likewise, we find the Kalnokis next contention--that they did not assert any contract causes of action in their pleadings--without merit.  The fifth cause of action in the amended complaint is for breach of the implied covenant of good faith and fair dealing.  Because the covenant of good faith and fair dealing is a contract term (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 683 (*Foley*) [" 'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement' "]), "compensation for its breach has almost always been limited to contract rather than tort remedies."  (*Id.* at pp. 684, 692-693 [refusing to recognize tort action for breach of implied covenant in context of employment contracts]; but compare *Crisci v. Security Ins. Co.* (1967) 66 Cal.2d 425 [exception recognized to permit an insured to recover in tort for emotional damages caused by the insurer's breach of the implied covenant].)

The 13th cause of action in the amended complaint sought to rescind the loan contract.  Other courts have found that an action for rescission is an "action on a contract" for purposes of an award of attorney fees and other costs under Civil Code section 1717.  (See e.g., *Hastings v. Matlock* (1985) 171 Cal.App.3d 826, 840-841["In an action to enforce the rescission of a written land sale agreement, containing a clause for attorney's fees which does not limit recovery of such fees to any particular form of action involving the contract, the prevailing party is entitled to an award of such fees"]; *Sharabianlou v. Karp* (2010) 181 Cal.App.4th 1133, 1146 [recognizing attorney fees may be appropriate in cases involving rescission of real property purchase agreements].)

61

In the second amended complaint's declaratory relief claim, the Kalnokis alleged the defendants had violated their contractual duties, and had failed to prove they had the right to foreclose as owners of the deed of trust or note. They sought a declaration that the foreclosure sale was invalid and that they were the true owners of the property. " 'Actions for a declaration of rights based upon an agreement are "on the contract" within the meaning of Civil Code section 1717.' " (*Kachlon, supra,* 168 Cal.App.4th at p. 348.)

But even if the Kalnokis technically did not sue for breach of contract, the expansive language in the deed of trust justifies the trial court's fee order in this instance. (See *Lerner v. Ward* (1993) 13 Cal.App.4th 155, 159-161 [fee provision that permitted attorney fees in any action arising out of the agreement was broad enough to encompass tort causes of action]; see also *Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1342-1343 [language providing for attorney fees to the prevailing party in any " 'lawsuit or other legal proceeding' to which 'this Agreement gives rise' " was sufficiently broad "to encompass both contract actions and actions in tort. . . ."].) Rather than limiting fees specifically to "breach of contract" causes of action, the deed of trust fee provision broadly applies to any "legal proceeding that might *significantly affect Lender's interest in the Property and/or rights under this Security Instrument* (such as a proceeding . . . to enforce laws or regulations)." (Italics added.)

Without question, the litigation below constituted a legal proceeding that might have "significantly affect[ed]" defendants' interest in the property or their rights under the deed of trust. Had the Kalnokis' prevailed and obtained the relief they sought, the foreclosure sale would have been vacated, the Trustee's Deed to U.S. Bank cancelled, and the property returned to the Kalnokis.

We also find persuasive the decisions cited by Wells Fargo and U.S. Bank that have awarded attorney fees based on identical attorney fee language in a deed of trust and promissory note. (See *Whittle v. Wells Fargo* 2010 WL 1444675, at *2-3 (E.D. Cal.

2010) (*Whittle*); *Lopez v. Wachovia Mortgage* 2010 WL 3034167, at *3 (E.D. Cal. 2010) (*Lopez*); *Zimmerman v. Aurora Loan Services* 2009 WL 81392, at *2 (N.D. Cal. 2009) (*Zimmerman*).) In each of those cases, the courts found the broad scope of the language permitted the recovery of attorney fees in foreclosure related actions like the one here. (*Whittle* at *2-3 [complaint sought injunctive relief to halt foreclosure and collection and contained allegations of fraud and commission of crimes and violations]; *Lopez* at *3 [finding complaint seeking injunctive relief to stop foreclosure and collection significantly affected lender's interest under deed of trust and note and that all claims were inextricably intertwined thereby allowing recovery of fees for defending all claims]; *Zimmerman* at *1-2 [identical deed of trust fee provision entitled lender to attorney fees for dismissing action based on foreclosure of plaintiffs' home].)

The Kalnokis' attempt to distinguish *Whittle*, *Lopez*, and *Zimmerman* on the ground that each involved the original lender is unavailing as nothing in the cases limits their applicability to original lenders. Because Wells Fargo and U.S. Bank succeeded to or were otherwise assigned their interests in the note and deed of trust, thus stepping into the shoes of the original lender and beneficiary, and since the Kalnokis' action "significantly affected" their rights under the note and deed of trust, the cases and their reasoning persuasively apply to the present matter.

Like the trial court, we also reject the Kalnokis' argument that the deed of trust was not properly authenticated during the motion for attorney fees or that it was otherwise unreliable. The deed of trust presented on the fee motion is the same as the deed of trust attached to the Kalnokis' second amended complaint, which they admitted in the complaint was a true and correct copy of the document.

The Kalnokis' next argue that Wells Fargo and U.S. Bank should not be deemed "prevailing parties" for purposes of a fee award. While they concede Wells Fargo and U.S. Bank are "currently deemed to be the prevailing parties in the underlying action," they nevertheless contend that the trial court's ruling in defendants' favor is only

63

temporary as it was allegedly obtained by fraud, which they believe will be overturned on appeal.

Wells Fargo and U.S. Bank obtained an order sustaining their demurrer to all causes of action in the second amended complaint without leave to amend. The court then entered a judgment of dismissal with prejudice in their favor and against the Kalnokis; the judgment specifically recited that the Kalnokis take nothing by their second amended complaint. The judgment of dismissal materially altered the legal relationship of the parties because Wells Fargo and U.S. Bank do not remain subject to the risk that the Kalnokis can re-file their action. This is especially so since, as discussed above, we affirm the judgment on the successful demurrers. Wells Fargo and U.S. Bank, then, undoubtedly constitute the prevailing parties in this action.

In their reply, the Kalnokis also half-heartedly contend Wells Fargo was not a "prevailing party" because it was never actually a defendant in the action. We find the argument disingenuous. Among numerous other references, Paragraph 2 of the second amended complaint specifically names Wells Fargo as a defendant. The paragraph partly provides, "At all times herein mentioned, Defendants, WELLS FARGO BANK NA . . ." The first cause of action for fraud is alleged against Wells Fargo alone.

Based on the broad language of the deed of trust fee provision, the trial court did not err in awarding defendants attorney fees for successfully defending this action. Because the Kalnokis do not challenge the amount of the fee award, $14,500, we do not consider the propriety of that amount on appeal. (*Telish v. State Personnel Bd.* (2015) 234 Cal.App.4th 1479, 1487, fn.4 ["An appellant's failure to raise an argument in the opening brief waives the issue on appeal"].)

64

XVI

*The Rental Disbursement Appeal (Case No. C079144)*

The Kalnokis' third appeal challenges the trial court's order disbursing the rental payments they deposited with the court pursuant to Code of Civil Procedure section 1170.5. The Kalnokis again repeat at length, and often without any citation to the record or to any authority, arguments concerning the allegedly erroneous demurrer rulings. We do not readdress these issues.

Turning to the propriety of the challenged disbursal order, the Kalnokis contend the trial court erred in granting the joint motion of Wells Fargo and U.S. Bank to disburse the funds because Wells Fargo was never a party to the unlawful detainer action and thus had no standing or entitlement to the rental funds, and that even if U.S. Bank was entitled to seek reimbursement, it waived any right to such money during the proceedings on the motion for summary judgment in the unlawful detainer action. We find the latter argument dispositive of the appeal.

To support their waiver argument, the Kalnokis cite U.S. Bank's summary judgment motion, which they allege includes the following: " '4. Waiver of Holdover Damages  [¶]  For purposes of this Motion for Summary Judgment, Plaintiff (U.S. Bank, NA) waives the rental holdover damages demanded in Plaintiff's Complaint.' " The Kalnokis also claim that during the hearing on the motion for summary judgment U.S. Bank's counsel confirmed that U.S. Bank was not seeking any monetary damages but solely the immediate possession of the property.

As far as we can tell, none of the three appellate records contain either the summary judgment papers in the unlawful detainer action or a reporter's transcript of the hearing. Nevertheless, the record on the Kalnokis' petition for writ of mandate contains U.S. Bank's summary judgment motion. (See Cal. Rules of Court, rule 8.147 [party may incorporate by reference all or parts of a record in a prior appeal].) Section 4 of the

65

moving papers states in full: "4. Waiver of Holdover Damages [¶] For purposes of this Motion for Summary Judgment, Plaintiff waives the rental holdover damages demanded in Plaintiff's Complaint. If, for any reason, this Motion for Summary Judgment is not granted, Plaintiff reserves the right to seek rental holdover damages." Wells Fargo and U.S. Bank, moreover, do not appear to dispute the characterization of the position allegedly taken by counsel at the hearing regarding waiver, but rather merely the scope of the purported waiver.

The record in this case does contain the judgment entered in the unlawful detainer action. That document includes the following notation: "The plaintiff waives all monetary damages."

The trial court found the above-quoted language did not mean Wells Fargo and U.S. Bank waived the rental payments deposited by the Kalnokis during the pendency of the litigation. According to the court's disbursement order, even if Wells Fargo, which was defined collectively with U.S. Bank in the moving papers, waived monetary damages in the unlawful detainer action, Wells Fargo was still entitled to the funds deposited with the court because that money, in the court's view, was "not considered UD monetary damages, but rather damages caused by the extension of the UD case." Thus, Wells Fargo did not waive payment of the deposited funds.

The funds were deposited with the court pursuant to Code of Civil Procedure section 1170.5. Under that statute, an unlawful detainer trial must be held within 20 days of the date that the request to set the time of trial is made. (Code Civ. Proc., § 1170.5, subd. (a).) If a trial is not held within the specified time, and the trial court finds there is a reasonable probability the plaintiff will prevail in the action, the court "shall determine the amount of damages, if any, to be suffered by the plaintiff by reason of the extension, and shall issue an order requiring the defendant to pay that amount into court as the rent would have otherwise become due and payable or into an escrow designated by the court

66

for so long as the defendant remains in possession pending the termination of the action." (Code Civ. Proc., § 1170.5, subd. (c).)

"This statutory scheme allows the court to require a defendant, prior to trial, to post a plaintiff's potential damages under specified circumstances concerning the setting of the trial date." (*Garcia v. Cruz* (2013) 221 Cal.App.4th Supp. 1, 5-6 (*Garcia*); Cal. Rules of Court, rule 8.1115, subd. (a) [opinions of the California Court of Appeal or superior court appellate division that are certified for publication or ordered published may be cited or relied on by a court or a party in another action].) "[S]ection 1170.5 limits the amount that the court can require to be deposited to prospective damages the landlord may suffer as the result of granting a continuance of the trial date to a tenant in possession . . . ." (*Garcia,* at p. 7.)

In general, there are at least two types of damages available in an unlawful detainer action. Back rent or other accrued damages that were owed prior to filing the unlawful detainer complaint constitute one form of damages. (*Medford v. Superior Court* (1983) 140 Cal.App.3d 236, 239; *Garcia, supra,* 221 Cal.App.Supp. at p. 7.) Prospective damages, which the landlord suffers when the tenant remains in possession of the property after initiating an unlawful detainer action, are another form of damages. (*Medford,* at pp. 240-241; *Garcia,* at p. 7.) Both are equally valid types of "damages" in an unlawful detainer action.

We are not persuaded by the argument of Wells Fargo and U.S. Bank that "the amounts deposited are not 'damages' which were sought at the time the action was filed, or which were contemplated then." Paragraph 10 of the unlawful detainer complaint alleges as follows: "The reasonable value of the use and occupancy of the Property is at least $50.00 per day, and damages to Plaintiff caused by Defendant(s)' unlawful detention thereof has accrued at said rate since March 17, 2011, *and will continue to accrue at said rate so long as Defendant(s) remain in possession of the property*." (Italics added.) Accordingly, U.S. Bank prayed "[f]or damages in the amount of at least

67

$50.00 per day from March 17, 2011, *through the date of entry of judgment*." (Italics added.) The $1,950 rental rate stipulated to by the parties, which is "at least $50.00 per day," represented the fair rental rate for allowing the Kalnokis to remain in possession of the property until the litigation was concluded and judgment was entered.

The judgment expressly states that the "plaintiff waives *all* monetary damages." (Italics added.) The word "all" means "the whole amount, quantity, or extent of," and "every member or individual component of." (*Merriam-Webster's Collegiate Dictionary* (11th ed. 2003) at p. 31.) The notation in the judgment thus makes clear that U.S. Bank waived its right to recover any type of monetary damages in the action. This includes the nearly $40,000 in prospective damages the Kalnokis deposited with the court pursuant to Code of Civil Procedure section 1170.5.

While the Kalnokis appealed the unlawful detainer judgment in the appellate division of the superior court, it does not appear that either U.S. Bank or Wells Fargo appealed the court's finding in the judgment that U.S. Bank had waived all monetary damages. In any event, the judgment was affirmed on appeal and has since become final. The Kalnokis' petition for writ of mandate to this court challenging the unlawful detainer judgment has also been denied.

Because the unlawful detainer judgment states all monetary damages were waived, and the rental funds on deposit with the court constitute a form of monetary damages in the unlawful detainer action, the trial court erred in awarding the funds to Wells Fargo. We therefore reverse the disbursement order.

XVII

*Motions for Sanctions*

The Kalnokis filed four sanction motions during the pendency of the present appeals. One has been denied; the other three remain pending.

68

The motions essentially assert the same basis for sanctions: because the foreclosure documents were allegedly fraudulent, counsel for defendants, who filed the documents in court and argued their meaning and validity should be sanctioned. Given that we have affirmed the judgments in the foreclosure appeal and the attorney appeal, we deny the Kalnokis' motions for sanctions.

## DISPOSITION

The judgments in case No. C073207 are affirmed. The attorney fees order in case No. C075062 is affirmed. The order in case No. C079144 disbursing the $40,950 plus accrued interest to Wells Fargo, which the Kalnokis deposited with the trial court pursuant to Code of Civil Procedure section 1170.5, is reversed; the court is directed to enter a new order disbursing the money to the Kalnokis. Each party shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3).)


                                        HULL            , J.



We concur:



        BLEASE          , Acting P. J.



        DUARTE        , J.

69