Filed 5/15/23  P. v. Hernandez CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>AUDREY JOYCE HERNANDEZ,<br><br>　　　Defendant and Appellant. | A161740<br><br><br>(Mendocino County<br>Super. Ct. No.<br>　　SCUK-CRCR-19-31442) |

This is an appeal from final judgment.  Defendant Audrey Joyce Hernandez was convicted after a bench trial of two counts of corporal injury on a child (counts one–two) and three counts of child neglect (counts three–five).  The court sentenced her to a total term of seven years four months, which included an aggravated six-year term on count one and a consecutive one-year four-months term on count two.

Defendant challenges the judgment on the grounds that (1) the trial court's denial of her request to continue trial resulted in a violation of her constitutional right to a jury trial (U.S. Const., 6th Amend.); (2) an ameliorative change to our determinate sentencing law requires a remand for resentencing; and (3) imposition of $4,312 in fees and fines despite her inability to pay violated her constitutional rights to due process and the prohibition against excessive fines (U.S. Const., 14th, 8th Amends.).  As the

1

People concede, defendant's latter two arguments have merit. Accordingly, we reverse and remand for further proceedings on defendant's sentence under the newly amended Penal Code[1] section 1170, subdivision (b) and her ability to pay the imposed fines and fees. In all other regards, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 1, 2019, an information was filed charging defendant with two counts of corporal injury on a child, D.R. (§ 273d, subd. (a); counts one–two), and three counts of child neglect involving T.R., L.R. and S.R. (§ 273a, subd. (b); counts three–five). These charges stemmed from events that occurred on or between May 1 and May 7, 2019. A bench trial began October 5, 2020, and revealed the following evidence.

Defendant lived with her five grandchildren, including 10-year-old D.R. and her 13-year-old sister, T.R. On May 7, 2019, D.R. reported to a school counselor that defendant was abusing her. The school counselor photographed significant bruising and injuries on D.R.'s body consistent with abuse and reported the matter to Child Protective Services. D.R. and the counselor were interviewed by a detective later that day. D.R. reported that defendant regularly beat her with a belt and occasionally directed T.R. to do the same.

The next day, police officers searched defendant's home and recovered her cell phone. On it, dated May 4, 2019, was a video showing D.R. naked, being ordered to put a pair of underwear in her mouth while a dog jumped at her and tried to bite the underwear. The dog can be seen scratching and biting D.R. while defendant laughed. Three of D.R.'s siblings, T.R. (age 13),

---

[1] Unless otherwise stated, all statutory citations herein are to the Penal Code.

2

L.R. (age 9) and A.H. (age 4), were present during this incident, and two of them participated in the abuse at defendant's direction.[2]

At trial, defendant took the stand and denied abusing D.R. The court rejected defendant's testimony and found her guilty as charged.

At the December 3, 2020, sentencing hearing, the trial court imposed an aggravated six-year term on count one with a consecutive one-year four-month term on count two. As to counts three–five, the court imposed one-year concurrent terms, resulting in a total sentence of seven years four months to be served locally in county jail. The court then split this term, requiring defendant to serve four years in custody and three years four months under mandatory supervision. This timely appeal followed.

## DISCUSSION

### I. *No Sixth Amendment Violation.*

Defendant claims the trial court violated her right to a jury trial under the Sixth Amendment of the federal Constitution when it denied her request for a continuance of trial for health reasons. On appeal, she argues there was good cause to grant a continuance under section 1050, subdivision (e). We conclude, however, defendant forfeited this claim when, in open court, she knowingly and voluntarily waived her jury trial rights. We begin with the relevant facts.

The charged crimes occurred in May 2019. In June 2019, defense counsel requested a continuance for a "couple weeks" to permit defendant to retain private counsel, advising the court, "This would be my last request." The court put the matter over until July 9, 2019, at which time she entered a not guilty plea. A preliminary hearing then went forward on July 30, 2019.

---

[2] These children were later interviewed about the incident by Child Protective Services.

When the matter came up for trial, defendant was 76 years old and suffering from health issues that required several more continuances. Most significant, defendant had open heart surgery in early 2020. Afterward, on March 13, 2020, defense counsel provided the court with a letter from defendant's physician recommending a trial delay for two months so that defendant could heal from the surgery. The trial court agreed and set a new trial date of May 13, 2020. However, on that date, defense counsel again asked for more time and the trial date was pushed back to October 5, 2020.

At a pretrial conference on September 16, 2020, defense counsel made an oral motion for a continuance based on defendant's continued health concerns. The prosecution refused to waive proper written notice, prompting the court to continue the hearing until October 1, 2020, so that defense counsel could file a written motion supported by necessary documentation regarding defendant's health. Defense counsel failed to do this. Instead, on October 1, 2020, he made another oral motion for a continuance, advising the court that defendant was still not recovered from surgery and recently suffered a "transient ischemic [attack]" or "mini stroke." Counsel further stated that he was still awaiting documentation as to defendant's condition from her physician but that it was his opinion that she was too fragile to sit through a multi-day jury trial. Counsel also informally offered the prosecution a letter from defendant's treating family nurse practitioner opining that defendant was not physically able to sit through trial due to her fragile medical condition, particularly considering the significant risks posed to her by the COVID-19 pandemic. The prosecutor opposed defense counsel's oral motion and objected to the nurse practitioner's informal letter as hearsay.

4

The trial court denied defense counsel's motion, as follows: "The Court does not find good cause to waive written notice of the [motion for continuance]. This issue has been percolating and there have been multiple attempts at an oral [motion]. From what was stated orally, even if there was a written [motion], without more from a medical doctor with a recent evaluation of [defendant], even with a—a written declaration, my tentative would be to deny it and not find good cause." The court was ready to proceed with a jury trial. However, the next day, on October 2, 2020, defendant waived her right to a jury trial and proceeded with a bench trial.

On appeal, defendant now contends the trial court's denial of her oral motion for continuance resulted in her subsequent waiver of a jury trial and, thereby, violated her constitutional right under the Sixth Amendment to a trial by jury. Defendant's argument fails, as she neither argues nor presents any evidence that her express waiver of the right to a jury trial was unknowing or involuntary.

On the contrary, before accepting defendant's jury trial waiver, the trial court questioned her extensively in open court. Among other things, the trial court confirmed defendant understood that the Constitution guaranteed her the right to a trial by jury consisting of 12 members of the community who could only find her guilty of the charges if the prosecutor proved the People's case beyond a reasonable doubt. On the other hand, if defendant waived her jury trial right, one person—the judge—would determine her guilt, based on the same burden of proof. The court also confirmed that defendant had enough time to discuss this waiver and its consequences with her attorney and that she understood that, once given, her waiver could not be taken back.

This record belies defendant's argument that her waiver of the right to a jury trial was the result of the trial court's denial of her request for a

5

continuance.  "Under both the federal Constitution and the California Constitution, a defendant in a criminal prosecution is guaranteed the right to a jury trial.  [Citation.]  Nonetheless, as enshrined in our state Constitution, a 'jury may be waived in a criminal cause by the consent of both parties expressed in open court by the defendant and the defendant's counsel.'  (Cal. Const., art. I, § 16.)  Waiver must be 'express[ed] in words . . . and will not be implied from a defendant's conduct.'  [Citation.]  Moreover, a court may not accept a defendant's waiver of a jury trial unless the waiver 'is knowing and intelligent, that is, " ' "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it," ' " as well as voluntary " ' "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." ' " ' "  (*People v. Daniels* (2017) 3 Cal.5th 961, 990.)  "We uphold the validity of a jury waiver ' "if the record *affirmatively* shows that it is voluntary and intelligent under the totality of the circumstances." ' "  (*Id.* at p. 991.)

We conclude our record affirmatively demonstrates defendant's waiver was voluntary and intelligent under the totality of the circumstances. (*People v. Robertson* (1989) 48 Cal.3d 18, 36–37 & fn. 5 [jury trial waiver stands where the court provides a thorough advisement that includes the following:  "You understand, also, that if you do waive jury and submit it to the Court, the Court will act solely.  If you have a jury trial, before a verdict can be returned either way, it requires unanimous agreement of all 12 jurors; do you understand that?"].)  Defendant does not claim otherwise.  Even accepting that a "proper weighing of the totality of the circumstances forces us to take into account [the court's denial of defendant's continuance motion]" (*People v. Daniels, supra,* 3 Cal.5th at p. 996), defendant was advised of both the nature of the right being abandoned and the consequences of the decision

6

to abandon it and was offered more time to discuss these issues with her counsel.  Under these circumstances, her Sixth Amendment challenge, premised on the court's denial of her continuance motion the previous day, fails.

## II. *Remand for Resentencing Under Section 1170.*

The parties agree defendant is entitled to a remand for resentencing to permit the trial court to apply the newly amended section 1170, subdivision (b), an ameliorative change to our determinate sentencing law that went into effect postjudgment, on January 1, 2022.  We also agree.

Senate Bill No. 567 (2020–2021 Reg. Sess.) amended section 1170 in fundamental ways.  (Stats. 2021, ch. 731, § 1.3.)  Relevant here, the bill made the statutorily prescribed middle term sentence the presumptive term unless "there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (§ 1170, subd. (b)(2).)

To the contrary, under the version of section 1170 in effect at the time of defendant's sentencing, the trial court had broad discretion to select a lower, middle, or upper term sentence.  (Former § 1170, subd. (b); former Cal. Rules of Court, rules 4.420, 4.421, 4.423.)  The court, exercising this discretion, chose the upper six-year term as the primary term on count one based on the aggravating factors set forth in the probation report.  These aggravating factors included, among others, the fact that the crimes involved a high degree of callousness and cruelty, defendant was armed with a belt and dog during their commission, the victim was particularly vulnerable, and defendant tried to hide a cell phone to obstruct the investigation.  None of

7

these facts were stipulated to or expressly found true beyond a reasonable doubt by a fact finder, as required under the amendatory version of section 1170, subdivision (b)(2).

Notwithstanding the trial court's adherence to the law in effect at the time of sentencing, it is well-established law that the amendatory version of section 1170, subdivision (b) applies retroactively in this case because the judgment is not yet final. (*In re Estrada* (1965) 63 Cal.2d 740, 745 [an "amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final"]; *People v. Lopez* (2019) 42 Cal.App.5th 337, 341–342 ["For the purpose of determining the retroactive application of an amendment to a criminal statute, the finality of a judgment is extended until the time has passed for petitioning for a writ of certiorari in the United States Supreme Court"].)

Accordingly, we remand this matter for further proceedings to permit the trial court to apply the amendatory version of section 1170, subdivision (b) in setting defendant's sentence.

## III. *Inability to Pay Hearing on Remand.*

Claiming an inability to pay, defendant challenges the trial court's imposition of a $600 restitution fine (§ 1202.4, subd. (b)), a reduced $3,000 fine for willfully inflicting upon a child cruel or inhuman corporal punishment or injury resulting in a traumatic condition (§ 273d), and a $712 probation supervision fee[3] (former § 1203.1, subd. (b)) as violations of the due process, equal protection, and excessive fines clauses of the federal and state Constitutions. In doing so, defendant relies primarily on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) and *People v. Kopp* (2019) 38

---

[3] We address the probation supervision fee separately in part IV, *post*.

Cal.App.5th 47, review granted Nov. 13, 2019, S257844 (*Kopp*)). The People, in turn, agree with defendant that because no actual determination was made below as to her financial circumstances, we should remand this matter to the trial court to permit defendant to request a hearing on her inability to pay the contemplated amounts.

"In *Dueñas*, the court held that the imposition of a court operations assessment and a court facilities assessment without a determination of the defendant's ability to pay was 'fundamentally unfair' and violated due process under the federal and state Constitutions. (*Dueñas, supra*, 30 Cal.App.5th at p. 1168.) The court also concluded that the execution of a restitution fine under section 1202.4 'must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine. (*Dueñas, supra*, at p. 1164.)" (*People v. Thompson* (2022) 83 Cal.App.5th 69, 120.)

In *Kopp*, a majority of the court agreed with *Dueñas* that with respect to nonpunitive assessments, "due process requires the trial court to conduct an ability to pay hearing and ascertain a defendant's ability to pay before it imposes court facilities and court operations assessments under Penal Code section 1465.8 and Government Code section 70373, if the defendant requests such a hearing." (*Kopp, supra*, 38 Cal.App.5th at p. 95, rev.gr.) However, the *Kopp* majority held that punitive fines, including the restitution fine under section 1202.4, should be challenged under the excessive fines clauses of the federal and state Constitutions rather than the due process clauses. (*Kopp, supra*, at pp. 96–97, rev.gr.) Again, a hearing on remand was required to determine whether imposing punitive fines on an indigent defendant violated the excessive fines clauses. (*Id.* at pp. 96–98, rev.gr.)

9

Since this matter is already being remanded for the trial court to resentence defendant under the amendatory version of section 1170, subdivision (b), and the People have no objection to defendant's raising her *Dueñas/Kopp* claim, we conclude a remand for further proceedings on this issue is proper. (*People v. Thompson, supra*, 83 Cal.App.5th at p. 121; *People v. Castellano* (2019) 33 Cal.App.5th 485, 490.)

## IV. *Assembly Bill No. 1869 eliminates the probation supervision fee.*

Last, defendant argues, and the People concede, a change in law under Assembly Bill No. 1869 (2019–2020 Reg. Sess.), which eliminated presentencing report fees, renders unenforceable the $712 probation supervision fee imposed by the trial court pursuant to former section 1203.1, subdivision (b). (Assem. Bill No. 1869 (2019–2020 Reg. Sess.) §§ 2, 62.) This is correct.

Assembly Bill No. 1869, effective July 1, 2021, eliminated fees related to producing a preplea or presentence report. (See former § 1203.1b.) Relevant here, this bill added section 1465.9, which states: "On and after January 1, 2022, the balance of any court-imposed costs pursuant to Section . . . 1203.1 . . . , as those sections read on December 31, 2021, shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (§ 1465.9, subd. (b).) This statutory language as well as the legislative purpose make clear this change in law applies retroactively in this case. (See Assem. Bill No. 1869 (2019–2020 Reg. Sess.) §§ 2 [the legislative purpose of the bill is to "eliminate the range of administrative fees that agencies and courts are authorized to impose to fund elements of the criminal legal system and to eliminate all outstanding debt incurred as a result of the imposition of administrative fees"], 62.) Thus, under this provision, any balance owed by defendant on the $712 probation

10

supervision fee under former section 1203.1 was rendered "unenforceable and uncollectable" as of January 1, 2022, and the portion of the judgment imposing this fee must be vacated.

## DISPOSITION

The judgment is reversed, and the matter is remanded for further proceedings so that the trial court can (1) resentence defendant under the newly amended version of section 1170, subdivision (b); (2) consider defendant's claim that she lacks the ability to pay the previously imposed monetary penalties; and (3) vacate the portion of the judgment imposing the $712 probation supervision fee.  In all other regards, the judgment is affirmed.

_____
Jackson, P. J.

WE CONCUR:

_____
Simons, J.

_____
Burns, J.

A161740/*People v. Audrey Joyce Hernandez*